SMITH *v.* JENNINGS.

1. PARTNERSHIP—EVIDENCE.

In an action by an assignee of labor claims to hold J. and H. liable as partners with C., the president of a corporation, where the issue was whether the corporation, after acquiring its mill, had contracted with J. and H., neither of whom was a corporator, to manufacture scrap into malleable iron for them at a certain price per ton, or whether they and C. undertook to conduct the business as copartners, the admission of testimony concerning the organization of the corporation, and showing that its capital stock was not paid in, was reversible error.

2. TRIAL—ARGUMENTS OF COUNSEL—APPEALS TO PREJUDICE.

In an action to enforce labor claims, where the only issue related to defendants' having a proprietary interest in the work for which plaintiffs were hired, a studied and persistent effort on the part of counsel to arouse the sympathies and prejudices of the jury by characterizing plaintiffs' homes as homes of extreme poverty ( of which there was no proof), and the defendants as a gang of Shylocks, come from a foreign State to rob workingmen of their wages, requires the reversal of a judgment in favor of plaintiffs.

3. CONTRACTS—DISPUTED TERMS—EVIDENCE.

As bearing·on the question of the probability of a disputed contract to manufacture iron at a stated price per ton having been made, testimony tending to show that the actual cost of manufacture was considerably more than the price stated is admissible.

Error to Muskegon; Russell, J. Submitted June 9, 1899. Decided September 27, 1899.

*Assumpsit* by William J. Smith against Edwin B. Jennings, David M. Hillis, and Edward P. Caldwell, copartners as the Consolidated Rail-Joint Company, on certain assigned labor claims. From a judgment for plaintiff, defendants Jennings and Hillis bring error. Reversed.

*Smith, Nims, Hoyt & Erwin,* for appellants.

*F. W. Cook* (*J. C. McLaughlin,* of counsel), for appellee.

MONTGOMERY, J. The declaration charges that the three defendants were, at the date of incurring the indebtedness which is the subject of the action, copartners in business under the name of the Consolidated Rail-Joint Company. The plaintiff is the assignee of a number of claims for labor. That the services charged for were rendered, appears not to have been disputed. The defense consisted of a denial of the alleged copartnership. The plaintiff relied chiefly on the testimony of defendant Caldwell to establish the fact of partnership. The appealing defendants denied the partnership, and gave testimony to show that the Consolidated Rail-Joint Company was a corporation organized under the laws of Illinois, with the defendant Caldwell the owner of substantially all of its stock; that, prior to any arrangement between the parties, the Consolidated Rail-Joint Company had acquired the rolling mill at Muskegon, or a right to it, and had arranged with the Muskegon Chamber of Commerce to receive a sum by way of a bonus for the operation of the mill; that he then applied to defendants Jennings and Hillis for assistance in carrying on the business. Up to this point the testimony is agreed. The case turns upon what agreement was then made. Caldwell testifies to an agreement for a joint venture, sharing profits and losses. Defendants Jennings and Hillis testify that the agreement was that Jennings should stock the mill with scrap, and that Caldwell, or the rail-joint company, should manufacture the same, and receive compensation by the ton. The two theories were submitted to the jury, who found for the plaintiff, and defendants bring error.

A large number of errors are assigned on admission of testimony. We shall refer to only such rulings as seem likely to arise on a new trial. The plaintiff was permitted to go into the question of the organization of the Consoli-

dated Rail-Joint Company, and to show that the capital
stock was not paid in. There was no question that such a
corporation *de facto* existed, and it appeared that Cald-
well assumed to act as its president; that he had made
the contract with Mr. Hackley for the plant in the name
of the corporation, signing it as president. The question
is, therefore, whether the corporation contracted with
Jennings to manufacture the scrap into malleable iron, or
whether the three defendants undertook as copartners to
conduct the business. We do not think the inquiry into
the antecedents of the corporation or the names of its
originators had any legitimate bearing on the question.
It was not claimed that either of the defendants Jennings
or Hillis was a corporator. It is urged that this testimony
was admissible as tending to show the improbability of
defendant Jennings contracting with a corporation so
organized. We think it had no such legitimate tendency,
but introduced a collateral issue, which was calculated to
prejudice the jury, particularly when it appears that the
use made of this testimony was to impress upon the jury
that judgment should pass against a responsible party,
rather than a corporation so organized, without much re-
gard to the question of whether the credit was given to
the corporation or defendants. *Busch* v. *Pollock*, 41
Mich. 64; *Howard* v. *Patrick*, 43 Mich. 121.

The counsel for the plaintiff used the following lan-
guage in his address to the jury, which was duly excepted
to:

"Frescoed wind; and still that was the kind of a con-
cern Mr. Hillis run Jennings in; that was the kind of a con-
cern he was trying to run Hugh Heron in. Now, that is
the way they tried to do business over here, gentlemen,
without a dollar in the world. They say that is the cor-
poration that is responsible to these laboring men. We,
we have bought our scrap, and we have got our interest
on it,—the money invested; we own the scrap; we own
the iron; we own the earth; we own the laboring men,
because we have got all they had.

"*Mr. Hoyt:* An exception.

"How nice that sounds,—'Exception!' He has got a perfect right to take it to every sentence. I wish he would take them twice. Gentlemen, that is the echo of the dollars over there. That is not the echo of the hours of weary toil performed down there upon that iron by these plaintiffs in this case,—not by Mr. Smith, but by the men who transferred their claims to him, they not being able to carry on lawsuits, perhaps; or, more than that, a multitude of suits of that kind couldn't be maintained in court very well. That is not the voice you hear coming up from an humble cottage. That is not the voice of a mother and a babe who today throughout this city and around the country are suffering because of the cupidity of these men. It is a different voice and a different wail you would hear, it would be a different sight you would see, if you could enter some of these humble cottages, deprived of the husband's and the father's pay for the month of December and down to the 5th of January. I tell you if you would go down to the Eighth ward, and see the fathers and the mothers that labored during the month of December and the beginning of January, see the little ragged children there that are today suffering simply through the trickery and cupidity of these men, your hearts would bleed with pity. You would not let these men carry that iron back to Chicago, and escape scot-free from paying the men who made the iron. If there are any doubts about this thing, you will solve it in their favor. * * * It is an important question. It is an important question to every laboring man throughout Western Michigan, whether a gang of Shylocks can come over from Chicago, put their money, in a small amount, into a venture, engage the services of our men here, and then, when the product has been manufactured by the stern reality of labor, if they can ship it out of Muskegon, and rob the workingmen of this place. It is important to every business man whether this class of people here can come from Chicago, or any other place, and start a business, contract debts, and then slip over the water without paying it. That is what this suit means. It is not the suit of Mr. Caldwell against Jennings and Hillis. It is the suit of toilers against capital. It is a suit brought for the purpose of enforcing that axiom that I speak of'—that the laborer is worthy of his hire."

We do not hesitate to say that this case should be reversed because of this language, independent of the ques-

tion of whether this testimony was properly admitted. We have frequently attempted to point out to counsel the impropriety of appeals to the prejudice of juries, such as appears in these extracts; and whenever it is reasonably apparent that the result was probably affected by an appeal to the prejudices against race or nationality, as in the case of *Cluett* v. *Rosenthal*, 100 Mich. 193 (43 Am. St. Rep. 446), or by studied and persistent effort to induce the jury to favor a resident as against a nonresident, we cannot permit a verdict won by such tactics to stand.   We have repeatedly said that it is not the province of this court to interfere with legitimate arguments of counsel, and that in any case we may allow something for zeal.   Counsel may, acting on their own judgment as to propriety and good taste, discuss the character of witnesses, the proba· bility of the truth of testimony given on the stand, and may, when there is any reasonable basis for it, characterize testimony.   All these things may constitute legitimate argument.   But no lawyer understands that poverty in the plaintiff's home (of which there is no proof) has any bearing on the question of which one of two contractors agreed to pay him for services performed, or that it is the especial duty of the jurors to stand by their neighbors in a suit against nonresidents.   When the attempt is to secure a verdict by such appeals to such prejudice, ingenious attempts to veil the effort cannot avail to prevent the court from refusing the fruits of such efforts to the party whose attorney has attempted to obscure the real issue.

It was the claim of defendants that a contract to manufacture merchantable iron from scraps had been made at six dollars per ton.   The plaintiff's testimony was opposed to this.   As bearing on the question of probability, plaintiff offered testimony to show that the actual cost of manufacturing was considerably more than the price stated.   We think no error was committed in admitting this testimony.   While it was not of great value, it had some bearing on the question.   *Campau* v. *Moran*, 31 Mich. 280; *Richardson* v. *McGoldrick*, 43 Mich. 476;

*Misner* v. *Darling*, 44 Mich. 438; *Banghart* v. *Hyde*, 94 Mich. 49.

It is contended by defendants' counsel that the court erred in refusing to grant a new trial on the ground that the verdict was clearly against the weight of the evidence. As the case must be reversed on the grounds stated, and as the testimony may differ on another trial, we find it unnecessary to consider this question.

Judgment reversed.

The other Justices concurred.