MERRILL *v.* TINKLER.

1. INTOXICATING LIQUORS — CIVIL-DAMAGE ACTION — HABIT OF IN-
TOXICATION—EVIDENCE.

Evidence concerning the details of occasions on which wit-
nesses saw the plaintiff's deceased husband intoxicated was
competent in a civil-damage action for his death against a
saloon keeper and surety, for the purpose of showing that
the deceased was in the habit of becoming intoxicated.

2. EVIDENCE—CROSS-EXAMINATION.

Prejudicial error cannot be said to have been committed by the trial court in refusing to require a witness for plaintiff to answer the question whether a bill for separate maintenance had been prepared for plaintiff prior to her husband's death, defendant omitting to lay a foundation as to the time when or person to whom the question referred.

3. SAME—FINANCIAL CONDITION.

A question concerning incumbrances on the farm of deceased, which was answered in so far as it was material by other testimony of the witness, was not improperly excluded.

4. INTOXICATING LIQUORS—TRIAL—PRESENCE OF MINOR CHILD.

Bringing a minor child of plaintiff into the courtroom cannot be held to have prejudiced the defendant, where it was removed after objection made and the jury did not appear to have known that the child belonged to plaintiff.

5. SAME—TRIAL—ARGUMENT OF COUNSEL.

Argument of counsel which called attention to the fact that the defendant surety was organized with a capital of $500,000, and asked the jury to deal with plaintiff as they would like to have their wives and daughters dealt with, although improper, is *held* to have been corrected by the intervention of the court and the charge to the jury, which admonished them to leave such matters out of consideration.

6. SAME—TRIAL—REQUESTS TO CHARGE.

A requested instruction to the jury that if deceased did not receive any intoxicating liquors from defendant after eleven or twelve o'clock on the day alleged, and did not become intoxicated until four o'clock in the afternoon, and then from liquor furnished by other persons, and if the intoxication of deceased was not contributed to by defendant, plaintiff could not recover, was sufficiently covered by the court in its charge which informed the jury that if the liquor sold by defendant did not contribute to his intoxication, the plaintiff could not recover.

Error to Livingston; Miner, J. Submitted November 19, 1909. (Docket No. 61.) Decided April 1, 1910.

Case by Anna Merrill against Martin Tinkler, principal, and the Michigan Bonding & Surety Company, surety, under the civil-damage act. A judgment for

plaintiff is reviewed by defendants on writ of error. Affirmed.

*Eugene A. Stowe, A. F. Bunting,* and *Bowen, Douglas, Whiting & Eaman,* for appellants.

*Louis E. Howlett* and *Edmund C. Shields,* for appellee.

MOORE, J. The plaintiff, widow of Philemon Merrill, deceased, obtained a verdict for $2,500 damages against defendants Martin Tinkler, a retail liquor dealer, and the Michigan Bonding & Surety Company, his bondsman, under section 5398, 2 Comp. Laws. Mr. Merrill, while intoxicated, was killed by a Pere Marquette train near the village of Howell on the evening of June 30, 1908. The case is brought here by writ of error.

The errors relied upon by defendants are grouped as follows (we quote from the brief):

"(1) Errors in the admission or exclusion of testimony.

"(2) Refusal of the court to exclude the minor child of the plaintiff from the courtroom, and the prejudicial error on the part of plaintiff in bringing the minor child into the courtroom and into the presence of and proximity to the jury.

"(3) Errors assigned in plaintiff's counsel's arguments to the jury.

"(4) Errors assigned upon refusal of the court to grant various of defendants' requests to charge, and upon various portions of the judge's charge, and the refusal of the court to grant a new trial upon the grounds raised."

We will discuss these assignments in the order presented by counsel:

1. It is claimed the court erred in allowing witnesses to give details of the times when they saw deceased intoxicated. It was important to know whether Mr. Merrill was in the habit of getting intoxicated. The testimony all bore upon that proposition.

The defendants claim the court erred in his refusal to

allow the witness Ella Hill, who was a daughter of the plaintiff by a former husband, to answer the following question on cross-examination:

"*Q.* Do you know, witness, whether a bill for separate maintenance was drawn for your mother prior to Mr. Merrill's death?"

If the testimony under any circumstances could be said to be competent, no proper foundation had been laid as to time when or the person to whom it is claimed reference was made in the question.

Defendants claim it was error for the court to refuse to allow Mrs. Merrill, the plaintiff, to answer the following question on cross-examination:

"*Q.* Was there at that time a mortgage on it (the farm) at the time you married him?"

This question related to a time long prior to the death of Mr. Merrill. Mrs. Merrill testified, in part, as follows:

" At the time of Mr. Merrill's death his farm was worth about $3,500. There was a mortgage on it at the time of his death between $600 and $800. * * * He had no other income except that from the farm. The interest on this mortgage, or anything else, would have to be paid out of the income of the farm."

This brought out all that was material as to the mortgage.

2. We again quote from brief of counsel:

" Defendants contend that it was manifest error for the plaintiff to produce her minor child in the courtroom; for the child to sit by her side for some time in the presence of and in close proximity to the jurors, when that child had an independent right of action against the defendants."

Counsel devote considerable space in their brief to this point, and make an argument which is quite remarkable, in view of what is shown by the record. Counsel for appellant stated to the court they desired to make a motion and asked that the jury be taken to the jury room. This was done. It was then stated to the court that a child

sitting back in the room was the child of Mrs. Merrill and the deceased, and a motion was made that it be excluded from the courtroom. While Mr. Greene was arguing this motion, the following occurred:

"*Mr. Howlett:* I will say we don't want to do anything that is improper or unfair. I understand some of the neighbors have been taking care of the child. If that can be managed, and if they will give Mrs. Merrill time—we don't care to do anything that is improper, but, as I stated, some of the neighbors have been taking care of the child for her, and she brought the child with her this afternoon. If she can manage that—

"*Mr. Eaman:* The child is sitting by the side of the mother, and the jury paying attention to it. It must influence the minds of the jury.

"*The Court:* I will not make any order excluding the child. If the parties wish to exclude it— (Exception for defendants.)

"*Mr. Shields:* If you can give us time enough—

"*The Court:* If you have other witnesses—

"*Mr. Shields:* We will call other witnesses while she is absent.

"*Mr. Greene:* Have the records show that the child is inside of the railing.

"*Mr. Howlett:* I object to that statement.

"*The Court:* The record don't show that.

"*Mr. Shields* (to witness): You may take the child home or somewhere and then come back as soon as you can. (Jury returned into court.)"

The child was taken from the courtroom before the jury came back. It does not appear that any juror knew the child belonged to the plaintiff, and no reference was made to the child in the presence of the jury.

3. Error is assigned to the argument of counsel:

"(*a*) The defendants contend that it was prejudicial and reversible error for Mr. Shields, who made the closing argument for the plaintiff, to appeal to the jury's prejudice with this statement: 'With a bond of a $500,000 corporation.'"

All the record shows as to this argument is what is quoted above. The context is not given. The bond was

read into the record and showed the capitalization of the company to be $500,000. The court in his charge told the jury:

"Now, gentlemen, there has been something said here about a bond and the amount of the bond, or about the wealth of one of the defendants. You are not to consider that in the least. It makes no difference whether one of these persons is worth one cent or $50,000,000. In this court everybody stands on the same level. whether he is a poor man or whether he is a rich man."

We again quote from the brief:

"(b) It was prejudicial argument, also, for plaintiff's counsel, Mr. Howlett, to say to the jury: 'Deal with this widow as you would like to have your daughters or wives dealt with.'"

The court at once said to Mr. Howlett and to the jury, upon his making the above statement:

"*The Court:* Under the decision of our Supreme Court, at this time, I shall have to correct Mr. Howlett. In deciding this case you must not take into consideration your own family whatever; that must be entirely left out."

We do not think what occurred as to this phase of the case constituted reversible error.

4. Did the court err in his failure to give requests and in his charge as given? The defendants contend that the court should have given their sixth request to charge, which was as follows:

"I further charge you that if you find from the evidence in this case that Philemon Merrill did not receive any intoxicating liquors from the defendant Tinkler, or his agents or servants, after about the hour of 11 or 12 o'clock on the 30th day of June, 1908, and that Merrill did not become intoxicated on that day until after the hour of 4 o'clock in the afternoon, and then became intoxicated from the effects of liquor furnished to him by some other person other than defendant Tinkler, his agents or servants, and that drink that Tinkler sold him earlier in the day did not directly contribute to the intoxication of Merrill which occurred after about 4 o'clock on that day, then your verdict should be no cause of action."

There was testimony that Mr. Tinkler sold liquor to the deceased in the afternoon as well as in the forenoon, though he claimed he made but one sale to him, and that in the forenoon. The court did not give the sixth request, but charged the jury upon that phase of the case:

"There has been something said in this case about the amount of liquor sold by the defendant. Now, the question is not so much as to the amount, but Did what he did sell him contribute to the drunkenness of the deceased? Or, in other words, Did the liquor which the defendant Tinkler sold him contribute to the intoxication of Mr. Merrill on the 30th of June? If it did not, if he sold him a drink in the forepart of the day, and that did not in any way contribute to the intoxication of Mr. Merrill, then, of course, the defendants would not be liable; but, if the liquor Mr. Tinkler sold him upon that day in any way contributed to the intoxication of Mr. Merrill, it makes no difference how many others sold."

The same idea was stated in various forms, and, we think, was a correct statement of the law.

The other assignments of error have been examined, but do not call for discussion.

Judgment is affirmed.

HOOKER, McALVAY, BROOKE, and BLAIR, JJ., concurred.