SOLOMON v. STEWART.

1. EVIDENCE — CHATTEL MORTGAGES — PAROL EVIDENCE RULE — RE-
   PLEVIN—CONDITIONS PRECEDENT.
   Where plaintiff brought replevin for two cows which he
   claimed under a chattel mortgage, and defendant alleged
   that at the time of giving the mortgage, as a condition
   precedent to its taking effect, the plaintiff, upon the sale
   of a horse to defendant, warranted that the horse was
   well and strong and able and willing to work and right
   in every particular and that, if not, defendant might re-
   turn the horse, testimony that the animal proved to be
   unsound or worthless, where there was evidence tending
   to prove defendant's theory, was inadmissible and should
   have been·ruled out by the trial court as in violation of
   the parol evidence rule.

2. SAME—VARIANCE—NOTICE OF DEFENSE—WANT OF CONSIDERATION
   —FRAUD.
   Under a special notice of defense, presented by the defend-
   ant in an action of replevin, alleging failure of considera-
   tion, that the note and mortgage were not intended to be
   absolute and that the horse, concerning which false rep-
   resentations were made, might be returned to plaintiff if
   it did not correspond with the representations, evidence
   tending to show partial failure of the consideration and
   the return of the horse was incompetent and should have
   been excluded.

3. TRIAL—ARGUMENT—MISCONDUCT OF COUNSEL.
   It was error on the part of defendant's counsel to refer to
   the nationality of the plaintiff in his address to the jury
   by asking the question whether the jury ever had a propo-
   sition put up to any white man, black colored, German
   Jew, etc., and to make further reference to plaintiff's
   nationality and insist on his right to do so, although he
   was checked by the trial court; the misconduct was preju-
   dicial, and requires the reversal of the judgment.·

Error to Hillsdale; Chester, J.   Submitted January
19, 1915.   (Docket No. 3.)   Decided March 17, 1915.

Replevin in justice's court by Moses Solomon against Albert G. Stewart for two cows. From a judgment for defendant plaintiff appealed to the circuit court. Judgment for defendant. Plaintiff brings error. Reversed.

*Fitzpatrick & Grommon,* for appellant.

*C. A. Shepard* and *B. E. Sheldon,* for appellee.

STEERE, J. This action in replevin was brought by Moses Solomon, plaintiff, to secure from A. G. Stewart, defendant, possession of two cows; Solomon claiming the right thereto under a chattel mortgage which he held covering said animals. The case was begun in justice's court, and after trial removed by appeal to the Hillsdale county circuit court, where, on retrial, verdict and judgment were rendered against plaintiff.

The chattel mortgage in question, accompanied by a note, was given plaintiff by defendant to secure the purchase price of a horse, also included in the mortgage, but which was returned by defendant and died before this action was begun. It appears undisputed that on May 4, 1912, Solomon sold Stewart a certain black horse for $50, at the same time delivering possession of the property and taking in return Stewart's note, due in six months, secured by a chattel mortgage on the horse sold and two cows belonging to Stewart. Within a few days Stewart returned the horse, claiming that he was not as represented and guaranteed, but, on the contrary, was unsound, weak, and worthless, and that according to the terms of their agreement it was his privilege to return him if, after trial, he did not prove as represented. This was denied by Solomon, who also claims to have refused to accept the horse when returned and left in front of his place of business, which was, however, entertained for about a month at a livery stable under an agreement with the keeper that Solomon would pay the charge if

Stewart would not, and was later taken from there by Solomon. Having observed in the local paper, as he states, that Stewart was advertising two cows for sale, Solomon, deeming himself insecure, demanded possession, and on refusal sued out this writ of replevin.

It is unnecessary to recite or review at length the flatly contradictory evidence of the respective parties upon numerous details of this transaction, which, if all admissible and all true, shows each did the other a great wrong. The only feature of it material here is that portion of Stewart's evidence in which he was permitted, against objection, to testify that the sale was conditional and contingent upon the horse proving to be, after a fair trial, well and strong, able and willing to work, and right "in every way, shape, and manner," as represented and guaranteed by Solomon, if not he might be returned, and that upon trial the horse proved hopelessly unsound, weak, incompetent, and worthless.

It is contended for plaintiff that the admission of such testimony to prove a conditional sale, which was its avowed purpose, was error, because it tended to change the terms of a written contract between the parties embodied in the note and mortgage, as held in *Martin* v. *Hamlin*, 18 Mich. 354 (100 Am. Dec. 181), and *Sheffler* v. *Sherman*, 167 Mich. 42 (132 N. W. 466). In the case of *Martin* v. *Hamlin*, a suit in chancery, complainant bought a farm of defendant, relying as to acreage on grantor's representations, and oral warranty, that the farm consisted of 110 acres. The amount of land was stated in the deed as "110 acres, more or less." Notes secured by mortgage were given for a portion of the purchase price. A subsequent survey disclosed a shortage of over 16 acres. Complainant sought to have the proportionate value of the deficiency ordered credited on his mortgage. The exchanged papers nowhere providing for such a con-

tingency, the court held, under the general rule exclud-
ing evidence of previous parol agreements not appear-
ing in the final written contract consummating a trans-
action, that evidence of an oral warranty touching the
number of acres in the farm could not be considered:

"Because the parol agreement would tend to contra-
dict and vary the notes and mortgage given by com-
plainant at the same time as a part of the same trans-
action; * * * and this rule applies as well in
equity as at law."

*Sheffler* v. *Sherman, supra,* was an action in replevin
for possession of two cows and a bull covered by a
chattel mortgage, given in the place of a former one
covering two cows and a horse. A note accompanied
the mortgage, both absolute on their face. The
animals were taken under the mortgage and replevied
by the mortgagor, who sought to show that the note
and mortgage were conditional, being given as security
for a guaranty as to the value of a certain team he had
traded. It was held error to admit this "testimony on
the part of the plaintiff tending to show a verbal con-
temporaneous agreement which would reduce the note
from an absolute and specific undertaking, according
to its terms and legal import, to a defeasible engage-
ment," citing numerous cases of like tenor.

Unquestionably it is competent to show as a defense
to such instruments a failure of consideration, or
fraud, or even that by distinct understanding and
agreement a physical delivery of the papers was not,
as between the parties, complete and operative in law
until something further was done. *Brown* v. *St.
Charles,* 66 Mich. 71 (32 N. W. 926) ; *Phelps* v.
*Abbott,* 114 Mich. 88 (72 N. W. 3) ; *Central Savings
Bank* v. *O'Connor,* 132 Mich. 578 (94 N. W. 11, 102
Am. St. Rep. 433). But it is not competent, under the
theory outlined in defendant's notice, insisted upon to
the court and strenuously urged before the jury, to

show by evidence of a contemporaneous parol agreement that the chattel mortgage and note, absolute on their face, were in fact conditional, and not what they purported to be.

Defendant's special notice sets out in detail an untruthful laudation of the property sold, a warranty, and an oral conditional contract, as before outlined, in effect contradicting or varying the written instruments given at the time of entering into said contract; but it contains no direct allegation of failure of consideration or distinct understanding and agreement between the parties that delivery of the note and mortgage was other than absolute, and, while deception and fraud in representations as to worth are charged, the alleged fraud, read in connection with the particulars stated, is limited and negatived by the alleged agreement giving defendant absolute right to return the horse, if not as represented. We think the testimony objected to inadmissible under defendant's special notice, and incompetent for the purpose to which it was devoted, argued, and left to the jury.

In argument before the jury counsel for defendant laid much stress upon the poverty of his client and the character of plaintiff, in a manner indicating much could be assumed on those subjects outside the evidence in the case. While reasonable allowance has always been made for the zeal of counsel in their forensic efforts to influence the emotions of the jury, the courts do not hesitate to draw the line on appeals to race prejudice. It is indicated by his name and to be implied from statements of court and counsel in the record that plaintiff is of Semitic antecedents. Counsel for defendant sought to make prejudicial use of that fact in his client's favor. In addressing the jury he said in part: "Did you ever have a proposition, or hear of a proposition put up to any white man, black colored, German Jew, or anybody else?" Being

cautioned by the court, opposing counsel having excepted to the remark, addressing the court, counsel stated that he put it on the ground of the way plaintiff did business, and, the court in further caution saying, "I think the reference to his being a Jew ought not to be made," counsel replied, "I didn't apply it because he was of that nationality; I applied it upon the ground that his conduct in this case showed, if he wasn't a Jew, he was adopting all the principles and the sharp practice that we call the Jew system." Again cautioned by the court, and told there was no evidence of such a system, counsel took exception to the remarks and ruling of the court, and proceeded to further argue the propriety of such comments, saying, "I have got a right to refer to and comment upon it as a Jew deal." Again checked by the court, he replied, "All right; we will call it a Christian act."

The mind of counsel in this case seems to have run in somewhat the same channel as that of counsel for plaintiffs in *Cluett* v. *Rosenthal,* 100 Mich. 193 (58 N. W. 1009, 43 Am. St. Rep. 446), who referred to defendants' nationality, calling them "men from Jerusalem," and on being checked by the court replied, "Take it back then; suppose they came from Podunk instead of Jerusalem." This adroit geographical shift did not save that case from reversal.

All such evident purpose to arouse the prejudice of the jury, and particularly when attended by a persistent effort to prolong in effect prejudicial argument to the jury by insisting on the right, and debating to the court that such argument is proper and competent, cannot be overlooked, nor can it ever, in the final analysis, prove other than detrimental to the interests of the litigant whose counsel resorts to such a course.

The judgment is reversed, and a new trial granted.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.