## PEOPLE *v.* FRONTERA.

1. CRIMINAL LAW—HOMICIDE—MURDER—MANSLAUGHTER.

Since information gained by a police officer or detective from statements made to him is hearsay, it was not an improper exercise of discretion, on cross-examination, to exclude an interrogatory as to what eyewitnesses the witness, a detective, had discovered who told a story different from that related by the witnesses for the prosecution, on a trial for murder.

2. SAME—TRIAL—EXCEPTIONS.

An exception, without securing a ruling or some action of the trial court, is not a sufficient basis to assign error for the review of improper argument of the prosecuting attorney.

3. SAME—CHARGE—ALIBI.

And respondent's request, in relation to an *alibi* and its effect, was not erroneously refused by the trial judge who fully and fairly instructed the jury upon the issues, and the degree of proof necessary to convict, and upon the rule of reasonable doubt.

Error to recorder's court of the city of Detroit; Connolly, J. Submitted April 23, 1915. (Docket No. 121.) Decided June 7, 1915.

Tony Frontera was convicted of manslaughter. Affirmed.

*Grant Fellows,* Attorney General, and *Charles H. Jasnowski,* Prosecuting Attorney, and *William M. Heston,* Assistant Prosecuting Attorney, for the people.

*Chawke & Sloan,* for respondent.

OSTRANDER, J. In the evening of June 6, 1913, shortly after 8 o'clock, two men, after some verbal

hostilities, engaged in a fist fight in a street in Detroit, during the progress of which, after blows had been exchanged, one of them, the smaller man, shot and killed the other and fled. There were five witnesses who stood within a few feet of the men. One testified that the smaller man said, before shooting, "Stop, or I will shoot;" one testified that he said, "I will shoot you;" three testified that he said nothing. The slayer was seen to run east on Larned street, and between two houses, one of them being numbered 115 East Larned street. The police were present in a few moments, and in the house No. 115 found and arrested the respondent. He was identified by those who witnessed the affair. He is an Italian, and the man who was shot, named Dean, was an American. Informed against for murder, respondent was convicted of manslaughter, was denied a new trial, and was sentenced.

He complains that various errors were committed at the trial, and to understand his contentions it is necessary to say that, in addition to establishing the fact that a homicide had been committed, two principal issues were presented—one, that respondent was not the man who fired the shot; the other, that the homicide was justifiable. Four witnesses testified that they saw a man running east on Larned street, who turned in between the houses as above stated, and that respondent was not the man. Of these, one was an American and three were Italians—one a cousin of respondent, one a lifelong friend, and one had known him for 10 years. A brother-in-law and another roomer at No. 115 testified that respondent was in the house at the time of the shooting.

A witness for the people was Jacob Golden, a detective, one of two in charge of the case. Upon his cross-examination, counsel for respondent sought to learn from him whether he knew of persons who claimed to have any knowledge of the affair who had

not been brought in as witnesses. The witness stated that a lady at No. 99 East Larned street saw a man run by her place, but could not identify respondent as the man. He was then asked, "Now, is there any one else that you can think of?" and the court remarked, "I think that is hearsay." Discussion followed, in the course of which respondent's counsel said, in substance, that his client should have the benefit of such information as the officer had, "and, if your honor lets him answer my questions, I may get some information out of him." The court replied, "I think it is hearsay, what somebody else told him," and respondent excepted. It is urged that there might have been witnesses, even eyewitnesses, known to the prosecution, favorable to respondent, whose names were not upon the information, and who were not called. I find no error in the ruling, although perhaps a better reason for it might have been assigned. Whatever an officer learns from others concerning the facts of a particular case is hearsay when related by him. But what counsel sought was to learn whether, from what they said to the officer, any of those interrogated appeared to be important witnesses. It will hardly be contended that it is the rule that an officer who has been employed in searching for witnesses, and has interviewed many, or few, persons, may be upon the trial interrogated concerning what the people who were interviewed, or who volunteered information, said to him. In no other way, in this case, could the testimony disclose matter of any importance to respondent. The witness had answered the question, "Do you know the names of any other witnesses on our side of this case that you called in?" by saying, "I got all the witnesses." The question immediately preceding the one to which the answer was excluded was, "You heard others giving a different version, but you did not take their

names?" and was replied to by the reference to the lady living at No. 99 East Larned street. The discretion of the trial court was fairly exercised.

Remarks of the prosecuting attorney in argument to the jury are complained about, principally upon the ground that they contrasted, or were intended to do so, foreigners, Italians especially, and American citizens. The argument is open to this criticism. But the purpose of the trial of a criminal cause is to determine, in a proper way, the guilt or innocence of the accused, and finally. The court sits to see that this is done, and counsel are supposed to aid the court; in any event, to call the attention of the court to any failure to proceed with propriety. Examination of the record discloses the fact that with respect to the point now noticed counsel for respondent contented himself with entering exceptions, without requesting rulings. The rule in criminal and civil causes is that the attention of the court shall be directed to alleged improper argument and its propriety at once determined. We do not say that in the trial of a criminal cause the abuse of argument may not be so flagrant and clearly prejudicial that because of it a conviction will be set aside, though no exception is taken to the argument as it proceeds. But it should be and it is the rule that conduct which counsel deems prejudicial to the interests of a client shall be corrected by the trial court, if correction is possible. In this case, in his charge the learned recorder said:

"Now, I charge you, gentlemen of the jury, that you are to determine this case upon the law as I give it to you, and upon the evidence as you have heard it from the witness stand, and not upon any prejudice against the man, or against any class of men who may reside in this community, but solely upon the facts in evidence, and under the law as I give it to you."

We are not impressed that the conduct of the prosecuting attorney is ground for a reversal. The debat-

able issues were simple, the case for the people upon each of them very strong.

Three assignments of error are based upon what the prosecuting attorney said in argument to the jury concerning an *alibi*, and in this connection it is complained that the court refused to give respondent's request numbered 5, which was:

"While an *alibi* is a defense easily proven and hard to disprove, yet, if evidence of an *alibi* is given, which raises a reasonable doubt as to the defendant's guilt, it makes out a perfect, and conclusive defense, and in such cases your verdict should be not guilty."

It has been said (2 Wharton, Criminal Evidence [10th Ed.], p. 1833) :

"Of all exculpatory defenses, that of an *alibi*, clearly established by credible testimony, is most conclusive."

The prosecuting attorney, while saying that "it is the refuge  *  *  *  of every convict that comes in here that hasn't got any other defense," and "the refuge of sinners," two very general and probably exaggerated statements, discussed the case made upon this issue, by respondent's witnesses, pointing out, argumentatively, that it was without merit. And the court said to the jury:

"Now, the claim is made here on the part of the prosecution that it was Frontera who killed Dean, and the claim is made on the part of the defense that it was not Frontera who killed Dean, but some other person. You must be satisfied beyond a reasonable doubt, first of all, of the identity of Dean's assailant —of the man who killed Dean. And you must be satisfied beyond a reasonable doubt that it was Frontera. If you are not satisfied beyond a reasonable doubt that it was Frontera who committed the homicide, then you will acquit him. Even though you are satisfied beyond a reasonable doubt that it was Frontera who committed the homicide, you must be further satisfied beyond a reasonable doubt that he

did it inexcusably or without legal excuse; that is, not in self-defense. If you are satisfied that it was he who killed Dean, and if you are further satisfied beyond a reasonable doubt that he did it not in self-defense, he would be guilty of a felonious homicide."

There was further admonition to the same effect, and the language employed effectually and pointedly presented to the jury the issue whether respondent was the man who did the shooting. In view of the necessity for presenting to the jury the double aspect of the defense, that respondent did not do the shooting, and that it was done in self-defense, it is doubtful if better language could have been used. We hold that upon this point reversible error is not made out.

The other assignments of error, save only the last, which are noticed in respondent's brief, relate to the charge and to refusals to charge as requested. They are without merit. The instructions concisely and admirably presented the actual case to the jury.

Of the refusal to grant a new trial it is said in the brief that:

"In our opinion the matters set forth in the affidavits in support of the motion for a new trial were sufficient to entitle defendant to a new trial, and we submit that the court erred in refusing to grant same."

There is no discussion of the matter. The record contains the affidavits relied upon and affidavits in opposition. Nine persons make affidavit that a man whom they saw running, or taking part in the affray in the street, or both, was not the respondent. An investigation followed the filing of these affidavits, the results of which were presented in counter affidavits, and we are impressed, as the recorder was, that they do not require the granting of a new trial.

Affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.