REETZ v KINSMAN MARINE TRANSIT COMPANY

Docket No. 63857. Decided December 23, 1982. On application by the plaintiff for leave to appeal, the Supreme Court, in lieu of granting leave to appeal, affirmed the decision of the Court of Appeals and remanded the case for a new trial.

Richard L. Reetz brought an action against Kinsman Marine Transit Company for injuries sustained as a deckhand aboard one of Kinsman's vessels. The Wayne Circuit Court, Roland L. Olzark, J., entered judgment on a verdict for Reetz. Kinsman appealed, claiming that the conduct and argument of Reetz's counsel denied it a fair trial. The Court of Appeals, R. M. Maher, P.J., and Bronson and Moore, JJ., reversed and remanded the case for a new trial in an unpublished opinion per curiam (Docket No. 78-1856). The plaintiff seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice Fitzgerald and Justices Kavanagh, Williams, Levin, Coleman, and Riley, the Supreme Court *held:*

Although the issue of the propriety of the arguments was not preserved by a request for a specific instruction or a motion for mistrial so as to guarantee a right of review, some of the arguments were so improper that it was within the discretion of the Court of Appeals to review the record to assure a fair trial. Arguments by counsel for the plaintiff were so improper and inflammatory as to deny the defendant a fair trial.

1. An appellate court may reverse the judgment of a trial court where improper conduct by one or both parties influenced the outcome of a trial, even though the party seeking review did not preserve the right to appellate review by an attempt to cure the error in the trial court. First the appellate court must determine whether the error alleged was in fact error, and, if so, whether it was harmless. If the error was not preserved for review, the reviewing court must determine whether the result may have denied a party a fair trial. Tainted verdicts need not be allowed to stand because counsel or the trial court or both failed to protect the interests of a party by timely action.

2. In this case, frequent references by the plaintiff's counsel to multi-million dollar awards in other cases were improper,

resulting in prejudice to Kinsman's interests. The references were continued even though objections by defense counsel were sustained by the court. Because the references were so numerous, it is doubtful that any instruction to the jury to ignore them would have been effective. Additionally, repeated comments by counsel for the plaintiff during closing argument portraying the defendant as an unfeeling, powerful corporation controlled by a ruthless millionaire should not have been permitted. The constant repetition effectively impressed the argument on the minds of the jurors, rendering it incurable and requiring reversal. Although no objection was raised, a new trial is required.

Justice Ryan, concurring, wrote that the challenged statements of counsel for the plaintiff, taken as a whole, demonstrate a deliberate and calculated effort to prejudice the jury.

Affirmed.

*Law Offices of Leonard C. Jaques, P.C.* (by *Leonard C. Jaques),* for the plaintiff.

*Foster, Meadows & Ballard* (by *John Arthur Hamilton)* and *Miller & Stillman* (by *Creighton E. Miller)* for the defendant.

PER CURIAM. Richard L. Reetz commenced this action against Kinsman Marine Transit Company to recover for injuries he sustained in September, 1974, while employed as a deckhand aboard Kinsman's vessel the *Merle McCurdy.* At that time, while engaged in a procedure to open the hatches on the vessel, Reetz fell backwards into an open hatch and plummeted approximately 40 feet to the steel deck below.

Reetz alleged under the Jones Act, 46 USC 688, that his injuries were caused by Kinsman's negligence in failing to properly train Reetz or, alternatively, that Kinsman was liable because of the vessel's unseaworthiness.[1] Kinsman countered that

[1] The issue of seaworthiness is separate from negligence alleged under the Jones Act. A seaworthy ship is one where no defective condition exists in the "equipment, appurtenances, crew, cargo or

the accident occurred because of Reetz's own negligence in failing to follow direct orders from his first mate not to walk backwards on the hatches while opening them. At the trial, testimony by Reetz and the first mate directly conflicted as to whether such orders were ever given. No other testimony relating to the alleged orders was presented.[2]

In closing argument, Reetz's attorney argued that Reetz's loss of earnings and earning capacity amounted to $400,000, while all his other damages would justify a total award of double that amount. Kinsman, however, argued that because Reetz was still employable the most he should recover was $40,000.

The jury returned a verdict of $800,000.

Kinsman's motion for new trial was denied, and it appealed, claiming that the conduct and argument of Reetz's counsel was so inflammatory that it denied Kinsman a fair trial. The attention of the Court of Appeals was directed to four areas of alleged misconduct: references to Reetz's ineligibility for workers' compensation or any other benefits; repeated references to multi-million dollar awards in other cases; unfounded allegations of cover-up and perjury; and undue emphasis on Kinsman's corporate nature and its wealth as well as the wealth of George Steinbrenner, III, chairman of the board of its parent corporation.

---

gear of the ship". *Shemman v American Steamship Co,* 89 Mich App 656, 665; 280 NW2d 852 (1979); *Earles v Union Barge Line Corp,* 486 F2d 1097, 1103 (CA 3, 1973).

[2] The only other evidence relating to the practice of sailors on the vessel was introduced by deposition of James Dale Mitchell, a seaman on the *Merle McCurdy* and an admitted close friend of Reetz. The contents of the deposition were not recorded, but apparently Mr. Mitchell testified that it was common practice for sailors on the *Merle McCurdy* to walk forward and backward on the hatches while opening them.

In an unpublished opinion, the Court of Appeals held that even though any one of the improper arguments alleged may not have been inflammatory or overly prejudicial, "taken as a whole they demonstrate a deliberate and calculated attempt to prejudice the jury" and as such require a new trial.

Reetz claims that the Court of Appeals erred because these issues were not properly preserved for appellate review, and even if they were properly considered none of the arguments amounted to error requiring reversal.

We find that, although the issue of the propriety of the arguments was not preserved by a request for a specific instruction or a motion for mistrial so as to guarantee Kinsman a right to review, some of the arguments were so improper that it was within the discretion of the Court of Appeals to review the record to assure that Kinsman obtained a fair trial. We further find that the arguments relating to multi-million dollar verdicts and the wealth and callousness of Kinsman were so improper and inflammatory that Kinsman was denied a fair trial. A new trial is required. Accordingly, we affirm the Court of Appeals, although on somewhat different grounds.

I

Reetz contends that the Court of Appeals should not have considered any of the claimed errors because they were not properly preserved for appellate review. The cases cited by Reetz in support of this argument stand for the proposition that a litigant has no *right* to appellate review unless he has requested a curative instruction or made a

motion for mistrial.[3] Nevertheless, the rule is not an absolute bar to review, for it does not preclude an appellate court from correcting substantial errors which were not preserved in the trial court.

Our prior cases have clearly stated that incurable errors are not shielded from appellate review because an attorney fails to request what in that case would be a futile instruction.[4] The "no objec-

[3] Reetz has cited the following cases in support of his argument: *Koepel v St Joseph Hospital,* 381 Mich 440, 442-443; 163 NW2d 222 (1968); *Kujawski v Boyne Mountain Lodge, Inc,* 379 Mich 381, 385; 151 NW2d 794 (1967); *Smith v Musgrove,* 372 Mich 329, 338; 125 NW2d 869 (1964); *Thelan v Mutual Benefit Health & Accident Ass'n,* 304 Mich 17, 28; 7 NW2d 128 (1942); *Herbert v Durgis,* 276 Mich 158, 166; 267 NW 809 (1936); *Curth v New York Life Ins Co,* 274 Mich 513, 524-525; 265 NW 749 (1936); *Moraine Products, Inc v Parke, Davis & Co,* 43 Mich App 210; 203 NW2d 917 (1972).

A review of these cases demonstrates that the errors raised were either harmless or curable. Indeed, the Court in *Koepel* noted the distinction:

"Definitely, there is not here before us that kind of jury argument which is so prejudicial as to be beyond repair—by curative instruction. Such an argument was held to warrant reversal, though no curative request was made, in *Steudle v Yellow & Checker Cab & Transfer Co,* 287 Mich 1; 282 NW 879 (1938)."

[4] Other civil cases allowing review although the issue had not properly been preserved at the trial level include *Sauve v Carling Brewing Co, Inc,* 374 Mich 487, 491; 132 NW2d 655 (1965); *Clark v Grand Trunk W R Co,* 367 Mich 396, 400; 116 NW2d 914 (1962); *Sakorraphos v Eastman Kodak Stores, Inc,* 367 Mich 96, 98; 116 NW2d 227 (1962); *Bahr v Miller Bros Creamery,* 365 Mich 415, 428; 112 NW2d 463 (1961); *Martiniano v Booth,* 359 Mich 680, 688; 103 NW2d 502 (1960); *Hicks v B & B Distributors, Inc,* 353 Mich 488, 492; 91 NW2d 882 (1958); *Weller v Mancha,* 353 Mich 189, 195; 91 NW2d 352 (1958); *St John v Nichols,* 331 Mich 148, 158; 49 NW2d 113 (1951); *Steudle,* fn 3 *supra,* pp 11-13; *Taliaferro v Pere Marquette R Co,* 249 Mich 281, 287; 228 NW 778 (1930); *Hatten v Bane,* 16 Mich App 10, 13; 167 NW2d 466 (1969); *Morrison v Skeels,* 16 Mich App 727, 735; 168 NW2d 644 (1969). Similarly, see the criminal cases of *People v Ignofo,* 315 Mich 626, 636; 24 NW2d 514 (1946); *People v Kelsey,* 303 Mich 715, 718; 7 NW2d 120 (1942); *People v Holmes,* 292 Mich 212, 215; 290 NW 384 (1940); *People v Bigge,* 288 Mich 417, 420-421; 285 NW 5 (1939); *People v Treat,* 77 Mich 348, 350; 43 NW 983 (1889); *People v Montevecchio,* 32 Mich App 163, 166; 188 NW2d 186 (1971); *People v Humphreys,* 24 Mich App 411, 415; 180 NW2d 328 (1970); *People v Slater,* 21 Mich App 561, 566; 175 NW2d 786 (1970).

*Cf. Solomon v Stewart,* 184 Mich 506, 511; 151 NW 716 (1915)

tion—no ruling—no error presented" rule requires counsel to seek to have error cured before the case is submitted to the jury. When a cure is not feasible, that rule need not be invoked.[5] Where improper conduct by one or both parties influences the outcome of a trial, an appellate court may reverse although the appellant's attorney did not seek to cure the error.

Some of our earlier cases have indicated that if an error is incurable, the party claiming prejudice should move for a mistrial.[6] Although such a motion is appropriate, it is not mandatory. A party may have such an investment in time and money in a trial at the point when incurable error arises that he would rather see the case go to the jury, hoping that the jurors will be able to ignore the improper argument. Such a decision is eminently reasonable, both for the individual litigant and the judicial system as a whole. A trial which has consumed valuable private and public resources need not be aborted because the jury *may* have been improperly influenced or distracted by closing argument.

When reviewing an appeal asserting improper

(incurable error; in spite of effort by trial court to cure, new trial ordered); *People v Fowler,* 104 Mich 449, 453; 62 NW 572 (1895) (same); *Kakligian v Henry Ford Hospital,* 48 Mich App 325, 329; 210 NW2d 463 (1973) (same); *Lapasinskas v Quick,* 17 Mich App 733, 739; 170 NW2d 318 (1969) (same). See, generally, *People v Shirk,* 383 Mich 180, 194; 174 NW2d 772 (1970); *People v Frontera,* 186 Mich 343, 346; 152 NW 1019 (1915); *Saginaw Twp v Stanulis,* 68 Mich App 314, 316; 242 NW2d 769 (1976); *People v Degraffenreid,* 19 Mich App 702, 715; 173 NW2d 317 (1969).

For non-Michigan authorities, see the cases cited in 4 CJS, Appeal and Error, § 245, fns 93-98, pp 763-764; § 297, fns 32-32.5, p 918, and 5 Am Jur 2d, Appeal and Error, § 549, fns 12-14, p 34.

[5] Because incurable error occurred in the instant case, we need not reach the questions whether and under what circumstances an appellate court may review curable, but not properly preserved, error.

[6] *Koepel,* fn 3 *supra,* p 443; *Thelan,* fn 3 *supra,* p 28; *Herbert,* fn 3 *supra,* p 166.

conduct of an attorney, the appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless.[7] If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted.[8] Tainted verdicts need not be allowed to stand simply because a lawyer or judge or both failed to protect the interests of the prejudiced party by timely action.[9]

In the instant case some of the alleged errors were incurable,[10] others curable,[11] and still others

[7] This Court has noted that in determining whether error is harmless two questions are pertinent. "First is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless? * * * Second, if not so basic, can we declare a belief that the error was harmless beyond a reasonable doubt?" *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972).

[8] An appellate court should not require that an appellant "demonstrate affirmatively prejudice" to his cause. If on the record an appellate court is "not able to say that the jury was not diverted from the merits * * *, nor could [they] say that the 'mischief done' was cured by the judge's efforts", then a new trial should be ordered. *Wayne County Road Comm'rs v GLS LeasCo, Inc,* 394 Mich 126, 139; 229 NW2d 797 (1975).

[9] It should be noted here that the trial court has a duty to assure that all parties who come before it receive a fair trial. Consequently, if counsel exceeds the proper bounds of argument, a judge should interrupt to correct counsel and take any curative measures which are necessary. See cases cited in 75 Am Jur 2d, Trial, § 211, p 294, fn 59.

[10] See below, sections IIB and IID.

[11] See below, section IIA.

not even error.[12] We will discuss each category of error raised by the appeal in order to give some guidance to both bench and bar for future cases.

## II

### A. Improper Reference to Workers' Compensation Benefits

In his opening argument, Reetz's attorney made the following statement:

"Now all of us are familiar with the concept of workman's compensation, because this is the remedy for a person who is working as an employee in a landlocked or shore-site employment situation * * *. [A] seaman is excluded from the general category of employees, * * * he has no right to any kind of compensation."

This statement was improper for two reasons. First, our prior cases have made it clear that it is not relevant whether or not a plaintiff seeking recovery for personal injury has other remedies available and, therefore, the topic should not be raised before the jury.[13] Second, the last sentence of the statement is simply untrue; Reetz was entitled to receive maintenance and cure benefits.[14]

If these were the sole errors committed, we

---

[12] See below, section IIC.

[13] *Hill v Harbor Steel & Supply Corp,* 374 Mich 194, 214; 132 NW2d 54 (1965); *Leitelt Iron Works v DeVries,* 369 Mich 47, 57-58; 119 NW2d 101 (1963); *Vanden Bosch v Consumers Power Co,* 56 Mich App 543, 555-556; 224 NW2d 900 (1974); *Vanden Berg v Grand Rapids Gravel Co,* 42 Mich App 722, 736; 202 NW2d 694 (1972).

See, also, *Kemp v Mutual of Omaha Ins Co,* 375 Mich 359, 366; 134 NW2d 696 (1965); *Lebel v Swincicki,* 354 Mich 427, 433; 93 NW2d 281 (1958).

[14] According to undisputed testimony presented at trial, the maintenance and cure benefits amounted to $8.00 a day and were paid under a labor agreement entered into by Kinsman and its employees.

would not remand for a new trial. The prejudice caused by reference to workers' compensation could have been cured by an instruction from the bench to the effect that sympathy or prejudice must not influence the jury's decision.[15] Such a readily cured error will not generally be reviewed unless properly preserved for appeal. In this instance there was no objection to the statement.

The incorrect portion of the statement is also not a basis for reversal in this case because during examination of one of Kinsman's witnesses, the facts that Reetz had a right to maintenance and cure and that Reetz did receive such payments were clearly brought out. Any prejudice caused by the statement was thereby cured and the error rendered harmless.

## B. References to Large Awards in Other Cases

During his closing statement, Reetz's attorney referred to multi-million dollar verdicts in other cases.

The arguments complained of include the following references:

"Now I know, for example, circumstances when we talk about in terms of 'six million dollar man'. * * * All we can do is go by history and what they have. In other words, what is it when you take away a man, all of his senses, all of his ability to move, a quadriplegic, loss of both arms and legs and this kind of thing, we have a circumstance where this could be up to a $7,000,000 award.

\* \* \*

"So what are you dealing with? Well, you're dealing with a man that we know. We read the papers; we

[15] See *Vanden Bosch,* fn 13 *supra.*

Reetz's attorney also mentioned in his closing argument that plaintiff "doesn't have workman's compensation", but this additional reference was not enough to make the error incurable.

know what happens; a person commits—tries to commit suicide and they don't get enough oxygen and they come back with over a $3,000,000 award."

Although these arguments were objected to and the objection sustained, in his rebuttal, Reetz's attorney continued the references.[16] In one form or another, Reetz's attorney managed to mention million-dollar awards seven times, even though objections to these arguments were made and sustained on four occasions.

Such references are improper and should not be permitted.[17] A one-time casual or vague reference to a large verdict in another case may not be sufficiently prejudicial to require a new trial.[18] Also, immediate instruction by the court may cure any error.[19] In this case, however, the judge failed to instruct the jury to ignore these references and the references were so numerous that it is doubtful any instruction would have been effective.

[16] The improper references in the rebuttal included the following:

"I'll say this: We know about millions of dollars being awarded for certain kinds of injuries; we know of that kind of thing; we know of millions of dollars being awarded for injuries.

\* \* \*

"You know, for example, that in order to compensate someone for losses, you have to speak in terms of large denominations. And those large denominations don't, within the purview of our knowledge, reach into the areas of millions of dollars."

Both of these references were objected to and the court advised Reetz's attorney not to refer to verdicts in other cases, yet in his subsequent efforts to "withdraw" these references, Reetz's attorney only compounded the error by mentioning million-dollar verdicts three more times.

[17] *Finn v City of Adrian,* 93 Mich 504, 508; 53 NW 614 (1892). *Finn* is the only Michigan case to deal with this specific issue, but other state courts have come to the same conclusion. See, generally, Anno: *Propriety and prejudicial effect of reference by counsel in civil case to amount of verdict in similar cases,* 15 ALR3d 1144, 1146-1149.

[18] *Richardson v Nelson,* 221 Ill 254; 77 NE 583 (1906).

[19] See, e.g., *Louisville & N R Co v Pointer's Adm'r,* 113 Ky 952; 69 SW 1108 (1902); *Cosar v Bemo,* 282 P2d 222 (Okla, 1955).

Under these circumstances, a new trial is required. We cannot with confidence conclude that Kinsman's interests were not prejudiced.[20]

## C. Claims of Cover-up and Perjury by Kinsman and Its Witness

Kinsman claims that Reetz's attorney caused error requiring reversal during closing argument by alleging that Kinsman was engaged in a cover-up to protect itself, and that its chief witness, first mate Ewers, had committed perjury. These statements were made in two installments; the first came during initial closing argument, the second during rebuttal.

The first set of statements includes:

"And one thing about that first mate, he didn't look you in the eye. He didn't look you in the eye, but there is a reason for it.

\* \* \*

"I can see where this man, this first mate could become a little irritated like he obviously was and like he admitted that he was. But, you see, he wasn't just a witness; he was an advocate \* \* \*. And they bring this man in. They pay him, pay his relief, and put him up in a hotel, and pay the air fare. There's no question about that. But he comes here \* \* \* as an advocate.

\* \* \*

---

[20] As stated by this Court in *GLS LeasCo,* fn 8 *supra,* p 139:

"A substantial doubt regarding fairness of the trial has been raised by the egregious and repetitive nature of the misconduct of the [appellee's] lawyer. On this record, we are not able to say that the jury was not diverted from the merits by the repetitious aspersions, nor could we say that the 'mischief done' was cured by the judge's efforts. To say \* \* \* that [appellant] must 'demonstrate affirmatively prejudice' is to misstate the test if not misplace the burden.

"It cannot be demonstrated what effect any particular statement has on a jury. Neither [appellant] nor any other litigant similarly situated can properly be expected to 'demonstrate affirmatively' a prejudicial effect on the jury resulting from improper remarks of opposing counsel."

"And obviously there was dereliction on the part of that man [Ewers] out there. And that dereliction didn't come out until I put the cross examination to him when he got so excited."

The rebuttal set is made up primarily of the following:

"If there is one thing we know in our nation today, it is that word 'credibility', and we know that word from Watergate * * *. And it's one thing for them—for a shipowner defendant to try to cover up its tracks like a polar bear out there in the snowstorm at the North Pole, this kind of thing. They can cover them; they're there, but you can find them and they have the upper hand.

*   *   *

"And this fellow, Ewers, up there that he wants you to consider his credibility and so do I, and there is a man who starts walking around and making a determination, trying to cover up his tracks, coming all the way down here. And it isn't a matter of 'Will you come?' * * * But Steinbrenner is the one who has the ship company, and he says in essence, 'All right', he says, 'come on, get down there and testify again.'

*   *   *

"And you know what; [Ewers' testimony is] not true. You know why this is not true?

"You see, because [it] was not substantiated by either one of those other two men."

We find that these arguments are proper under the circumstances of this case and will not serve as grounds for reversal.

The first group of statements merely comment on the demeanor of the witness[21] and point out the

[21] As this Court stated in *Smith v Jennings,* 121 Mich 393, 397; 80 NW 236 (1899):

"Counsel may, acting on their own judgment as to propriety and good taste, discuss the character of witnesses, the probability of the

possibility that he may be biased since, as demonstrated during the trial, his wages and the expenses he incurred for testifying were all paid by his employer. Such comments are well within the bounds of propriety and supported by the evidence presented in court.

The second group is no more harmful; when read as a whole, it is simply argued that Ewers and Kinsman were not presenting the truth, because, if they were, Kinsman would have produced the other witnesses to the incident.[22] If, as in this case, the testimony of a witness for the plaintiff directly contradicts the testimony of a witness for the defendant, and there is no reason to believe that an honest mistake has been made, so that one witness must be fabricating, each counsel has the right to argue that his witness speaks the truth while the other presents a fabrication.[23]

Also, it is legitimate to point out that an opposing party failed to produce evidence that it might have, and consequently the jury may draw an inference against the opposing party. This is permissible even though the same witnesses could have been produced by both parties.[24]

truth of testimony given on the stand, and may, when there is any reasonable basis for it, characterize testimony."

Accord, *Commonwealth Electric Co v Rose,* 214 Ill 545; 73 NE 780 (1905); *Illinois C R Co v Beebe,* 174 Ill 13; 50 NE 1019 (1898); *In re Bean's Will,* 85 Vt 452; 82 A 734 (1912).

[22] Ewers testified that just prior to the accident he had instructed Reetz with two other seamen present that one should never walk backwards on the hatches while attaching a cable to them in order to open them. Reetz testified that no such instructions were ever given. Reetz's attorney commented on the fact that neither of these other seamen were called as witnesses although at the time of trial one of them worked on the same vessel as Ewers.

[23] *Fishleigh v Detroit United Ry,* 205 Mich 145, 155-157; 171 NW 549 (1919).

[24] Since there was no proof that either of these other alleged witnesses was not available to Reetz, Kinsman's attorney could have commented on Reetz's failure to produce them. *Barringer v Arnold,*

## D. Comments on Kinsman's Corporate Nature and Wealth

Kinsman further claims that Reetz's lawyer inflamed the passions of the jury against Kinsman by constantly stressing the corporate nature, wealth, power, and insensitivity of Kinsman.

Comments made during closing argument which fall into this category include a claim that Reetz's attorney is dedicated to representing only individuals and not corporations,[25] that Kinsman cared nothing about Reetz's welfare,[26] that Kinsman can afford the best of everything,[27] and repeated references to George Steinbrenner, III, owner of the New York Yankees and chairman of the board of Kinsman's parent corporation, although he was not personally a party in the case.[28]

---

358 Mich 594, 601-605; 101 NW2d 365 (1960); *Grubaugh v City of St Johns,* 82 Mich App 282, 289-290; 266 NW2d 791 (1978).

[25] "You see, I've dedicated my life to protecting the valuable lives of people; individuals, not corporations; but individuals and small businessmen."

[26] "[T]he shipowner has no concern; they still have no concern. * * * I want to tell you one thing. [In] this case * * * they're trying to stamp him out."

[27] "That shipowner has two batteries of lawyers * * *. And the shipowner is able to get the very best of anything it wants, and at this juncture it has the very best of attorneys. It didn't want to do the very best it could have done for the plaintiff seaman. But now it's doing the very best it can do."

[28] At different points in his closing argument, Reetz's attorney made the following comments:

"Steinbrenner—I don't care what they say—Steinbrenner is the man behind all this, both the shipping companies * * *." [Reference to defendant corporation and present corporate owner of the ship on which plaintiff was injured. No evidence of this connection was presented at trial.]

"And it isn't a question of 'Will [Ewers] come [to testify]?' I mean, no matter how he puts it, Steinbrenner, I imagine Steinbrenner feels pretty good. His Yankees won last night. But Steinbrenner is the one who has the ship company, and he says, in essence, 'All right,' he says, 'Come on, get down there and testify again.'

"And there is a conglomerate of circumstances with Kinsman Marine Transit Company. Steinbrenner is over there owning a baseball team, and Rick can't even play kitten ball."

The effect of these comments was to create in the minds of the jurors an image of Kinsman as an unfeeling, powerful corporation controlled by a ruthless millionaire. Even a juror who harbored no prejudice against corporations or millionaires might have been swayed by these inflammatory remarks to alter his view of the evidence.

Our prior cases should have made clear that even isolated comments like these are always improper, even if not always incurable or error requiring reversal.[29] However, when, as in this case, the theme is constantly repeated so that the error becomes indelibly impressed on the juror's consciousness, the error becomes incurable and requires reversal.[30] We find the following statement from *Steudle v Yellow & Checker Cab & Transfer Co*, 287 Mich 1, 11-12; 282 NW 879 (1938), to be applicable in this case:

"We believe the record in the instant case shows a deliberate course of conduct on the part of counsel for plaintiff aimed at preventing defendant from having a

[29] *Herbert v Durgis,* 276 Mich 158, 165; 267 NW 809 (1936) (wealth of defendant); *Kasprzak v Chapman,* 197 Mich 552, 555; 164 NW 258 (1917) (same, cured by instruction); *Davis v City of Adrian,* 147 Mich 300, 307; 110 NW 1084 (1907) (contrasting the financial situation of parties); *Merrill v Tinkler,* 160 Mich 575, 579-580; 125 NW 717 (1910) (reference to $500,000 corporation); *Louden v Vinton,* 108 Mich 313, 320; 66 NW 222 (1896) (defendant's wealth, defendant trying to crush plaintiff). See, generally, Anno: *Counsel's appeal to racial, religious, social, or political prejudices or prejudice against corporations as ground for a new trial or reversal,* 78 ALR 1438, 1452-1455, 1474-1478, 1488; Anno: *Counsel's appeal in civil case to wealth or poverty of litigants as ground for mistrial, new trial or reversal,* 32 ALR2d 9, 18-48.

[30] *Sauve v Carling Brewing Co, Inc,* 374 Mich 487, 489; 132 NW2d 655 (1965) (corporate power of defendant); *Sherwood v Evening News Ass'n,* 256 Mich 318, 325-327; 239 NW 305 (1931) (corporate defendant with capable attorneys versus individual); *Johnson v Michigan Mutual Savings Ass'n,* 242 Mich 558, 564; 219 NW 736 (1928) (poverty of plaintiff); *Holmes v Loud,* 149 Mich 410, 415; 112 NW 1109 (1907) (wealth, character, and influence of defendants commented upon); *Smith v Jennings,* fn 22 *supra* (contrast wealth of parties).

fair and impartial trial. We think the course of misconduct was so persistently followed that a charge of the court in an effort to obviate the prejudice would have been useless."

Thus, although no objection was made to these comments, a new trial should be ordered.[31]
Affirmed.

FITZGERALD, C.J., and KAVANAGH, WILLIAMS, LEVIN, COLEMAN, and RILEY, JJ., concurred.

RYAN, J. I concur because I am persuaded that the challenged statements of plaintiff's trial counsel, taken as a whole, demonstrate a deliberate and calculated effort to prejudice the jury.

[31] See fn 4 *supra.*