# STATE OF MICHIGAN

# COURT OF APPEALS

FRANK WOJCIK,

      Plaintiff-Appellee,

v

AUTOMOBILE CLUB INSURANCE
COMPANY,

      Defendant-Appellant.

UNPUBLISHED
December 27, 2018

No. 336998
Wayne Circuit Court
LC No. 13-014048-NF

TIFFANY CLARK, also known as TIFFANY
CLARKE,

      Plaintiff-Appellee,

v

AUTOMOBILE CLUB INSURANCE
COMPANY,

      Defendant-Appellant.

No. 337336
Wayne Circuit Court
LC No. 14-005188-NF

Before: M.J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

In these consolidated appeals involving no-fault personal protection insurance (PIP) benefits, defendant appeals as of right from judgments in favor of plaintiffs Frank Wojcik and Tiffany Clarke that were entered following a jury trial. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On July 28, 2013, Wojcik was operating a motorcycle with Clarke as his passenger when Wojcik lost control of the motorcycle, throwing both himself and Clarke from the motorcycle and causing them both injuries. Wojcik suffered a brain injury and was unable to remember the events leading to the crash. Clarke, however, recalled that a sports utility vehicle (SUV)

-1-

approached the pair rapidly, passed the motorcycle, and then quickly cut back in front of it. She said that Wojcik attempted to brake to avoid the vehicle, but lost control, leading to the crash.

Wojcik held a no-fault automobile insurance policy issued by defendant and he also held liability insurance for his motorcycle, but he did not have medical coverage on that policy. Both Wojcik and Clarke submitted claims for PIP benefits for loss of wages, medical expenses, and expenses for replacement and attendant care services pursuant to Wojcik's no-fault automobile insurance policy. However, defendant denied their claims, claiming that there was no evidence of a motor vehicle's involvement in the accident.[1] Subsequently, Wojcik and Clarke filed separate lawsuits against defendant. In addition, Clarke filed a claim against Wojcik, alleging that his negligence in operating the motorcycle caused her injuries. Clarke's claim against Wojcik was later settled outside of court.

## II. THE IMPEACHMENT OF CLARKE

### A. STANDARD OF REVIEW

Defendant first argues that the trial court abused its discretion in precluding defense counsel from impeaching Clarke with the allegations that she made against Wojcik in her legal claims against him. We review "preliminary questions of law" in accordance with the de novo standard and the "trial court's decision to admit or exclude evidence . . . for an abuse of discretion." *Guerrero v Smith*, 280 Mich App 647, 660; 761 NW2d 723 (2008). "An abuse of discretion occurs when the court's decision falls outside the range of principled and reasonable outcomes." *Id*.

"All relevant evidence is admissible," unless the rules of evidence or the state and federal constitutions provide otherwise. MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Evidence bearing on a witness's credibility is always relevant[.]" *In re Dearmon*, 303 Mich App 684, 696; 847 NW2d 514 (2014). MRE 611(a)(c) also provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." However, the trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

---

[1] MCL 500.3105(1) provides:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury *arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle*, subject to the provisions of this chapter. [Emphasis added.]

A motorcycle is *not* a motor vehicle. See MCL 500.3101(2)(i)(*i*). Thus, PIP benefits are not required to be paid under the no-fault act if only a motorcycle is involved in the accident.

During direct-examination, Clarke described how Wojcik was able to operate the motorcycle without difficulty in the time leading up to the accident. Although Wojcik had the motorcycle headlights turned on, Clarke was not able to see the color of the SUV that cut in front of the motorcycle because it was so dark out. Clarke testified at trial concerning the cause of the accident as follows:

> I saw a car cut in front of us, cut us off. [Wojcik] reacted so where we wouldn't fly into him and therefore after the repercussions of us not flying into that car [Wojcik] locked up his brakes and the bike started fishtailing from behind and then I was thrown off the motorcycle.

During her direct examination by Wojcik's counsel, Clarke was also questioned regarding why she did not initially disclose to the investigating police officer that the SUV was involved in the motorcycle accident. In response, Clarke confirmed that if she had been asked by the police about the existence of another motor vehicle being involved in the crash, she would have "[a]bsolutely" answered in the affirmative. It was only when Clarke first completed an affidavit on August 28, 2013 detailing the circumstances of the accident that she disclosed the existence of the SUV and its involvement in the crash. Clarke also testified that she and her counsel were not able to identify the SUV that caused the motorcycle collision.

During an extensive and thorough cross-examination, defense counsel pointed out that in her August 28, 2013 affidavit, Clarke had averred that the motor vehicle that caused the collision with the motorcycle was a car, not an SUV. Defense counsel also questioned Clarke about how much alcohol she and Wojcik consumed before travelling to the area of the accident. Clarke was also questioned about how, during her May 2014 deposition, she testified that Wojcik was travelling at 35 miles an hour, but, in contrast, when she initially spoke to the police, she told the police that Wojcik was travelling at 45 miles an hour. Defense counsel also examined Clarke regarding her statement during her September 9, 2014 deposition that Wojcik blew his horn during the accident, but that this fact was omitted in her August 28, 2013 affidavit. When defense counsel questioned Clark about a conversation she had with Trooper Zachary Tebedo of the Michigan State Police shortly following the accident, she not only denied having the conversation, but also denied telling Trooper Tebedo that Wojcik's motorcycle "began to fishtail" when driving on a loose gravel roadway. Clarke also denied telling Trooper Tepedo that the motorcycle collision was caused by Wojcik's inability to regain control of the motorcycle. Defense counsel also strenuously questioned Clarke about why she did not tell Trooper Tebedo about the SUV during her conversations with him following the motorcycle accident. After defense counsel accused Clarke of believing that a "phantom vehicle" caused the motorcycle accident, she went on to ask Clarke: "[y]ou don't think this accident was caused by [Wojcik] at all, right?" Clarke proceeded to answer, "[a]bsolutely not." When defense counsel inquired why Clarke would then "sue[ ] [Wojcik] anyway[?]," an objection was raised and defense counsel's questioning of Clarke ceased for the day. After counsel for Wojcik articulated an objection on the basis of relevancy and argued that the admission of evidence relating to Clarke's legal claims

against Wojcik would be highly prejudicial to plaintiffs, the trial court sustained the objection, agreeing that the line of questioning was not relevant to the key issues in the case.[2]

When trial resumed, defense counsel continued to cross-examine Clarke, questioning her regarding the circumstances leading to her informing Wojcik's counsel, in the time period after the accident, about the SUV that caused the motorcycle accident. During this line of questioning, defense counsel repeatedly pointed out the inconsistencies between Clarke's trial testimony and her testimony during her September 9, 2014 deposition. Defense counsel also asked Clarke about her conversations with an employee of defendant following the accident, and what she told that employee about Wojcik's rate of speed at the time of the accident. Defense counsel concluded her questioning of Clarke by pointing out Clarke's high blood alcohol level at the time of the accident.

## B. HARMLESS ERROR

While defendant asserts that the trial court abused its discretion in declining to allow defense counsel to question Clarke regarding her negligence claim against Wojcik, even if we were to agree with this contention on what was a close evidentiary question for the trial court,[3] reversal is not warranted where any alleged error was harmless. MCR 2.613(A) provides:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

An error is considered harmless "if it did not affect the outcome of the proceeding." *In re Portus*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 337980); slip op at 12.

> A trial court error is harmless if, based on review of the entire record, it is more probable than not that the error was not outcome determinative; if the probability runs in the other direction, then it is reversible error. [*Nashal v Fremont Ins Co*,

---

[2] We take this opportunity to observe that the record indicates that defendant may have contributed to the alleged error on the part of the trial court of which it now complains. For example, Wojcik had included Clarke's complaint as an exhibit for trial in the joint final pre-trial order and the record reflects that defendant had objected to the admission of this exhibit. See *Mueller v Brannigan Bros Restaurants & Taverns, LLC*, 323 Mich App 566, 586, ; 918 NW2d 545 (2018) (recognizing that "[e]rror requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence.").

[3] A trial court's decision on a close evidentiary question will generally not amount to an abuse of discretion. *Andreson v Progressive Marathon Ins Co*, 322 Mich App 76, 87; 910 NW2d 691 (2017).

___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket Nos. 336234, 336919); slip op at 12.]

While defendant claims that the exclusion of evidence regarding Clarke's legal claims against Wojcik hindered its ability to challenge Clarke's credibility, particularly with regard to whether an SUV caused the accident giving rise to these appeals, a thorough review of the record, particularly defense counsel's vigorous cross-examination of Clarke, belies this claim. Throughout cross-examination, defense counsel was afforded abundant opportunity to challenge Clarke's recollection of the motorcycle accident, her memory of pertinent details, as well as subsequently conversations with and reports made to the police investigating the accident. Clarke was also questioned repeatedly about discrepancies between her deposition testimony, her trial testimony and an August 28, 2013 affidavit that she executed at the request of Wojcik's counsel. Specifically, defense counsel pointed out that while Clarke did not tell the police investigating the accident about the SUV that caused the crash, she did reveal that information to Wojcik's counsel. Defense counsel also was afforded ample opportunity to question Clarke about Wojcik's operation of the motorcycle in the time leading up to the accident. In sum, a review of the trial transcript confirms that defense counsel did a thorough, detailed and extensive job of cross-examining Clarke, deftly and capably impeaching her testimony and credibility on numerous occasions, and highlighting the frailties of her evidence before the jury. In her closing argument, defense counsel also attacked Clarke's credibility on several occasions, suggesting that she was lying about the presence of the SUV at the motorcycle accident and asserting that Clarke was not a persuasive or believable witness.

Throughout trial, the jury also heard the testimony of Trooper Tebedo, called as a witness by the defense, who during his direct examination, after noting that he smelled alcohol on both Wojcik and Clark after arriving at the crash site, stated the following with respect to his conversation with Clark on August 1, 2013 when she detailed the events of the crash:

> [Clarke] said that night they were out to dinner with a few friends. They had consumed a few alcoholic beverages. They ate dinner and then they were on their way to disperse [Wojcik's] father's remains. I believe it was Fletchers Pond they said they were headed to. While traveling north on south Nolet Road, [Clarke] said that she was on the back of the motorcycle. She felt the back end of the bike cut loose. [Wojcik] lost control of that bike. [Wojcik] was unable to regain control. At that time they ran off the roadway and crashed into the ditch. Both of them were thrown from the bike. [Clarke] didn't say anything further than that detail wise.

Trooper Tebedo confirmed that Clarke did not share with him on August 1, 2013 that another motor vehicle was involved in the crash and he also clarified that he did not specifically ask her if another vehicle was involved. The jury also heard the testimony of Michigan State Police Sergeant Ted Stone, called by defendant, who performed a traffic crash reconstruction. Sergeant Stone stated that his investigation did not yield any evidence that would suggest that another motor vehicle was present at the time of the accident, although he could not rule out that possibility. Additionally, the deposition testimony of Michael Elliott, the only eyewitness to the accident, was presented to the jury, in which Elliott shared that he did not think that another motor vehicle could have been involved in the motorcycle accident, but he did concede that he

did not know for certain. The jury also heard the testimony of defendant's claims representative, Troy Spaman, who testified that when Wojcik's stepfather, Joseph Lasky, initially contacted defendant to make an insurance claim on August 6, 2013, the claim was reported as a crash involving a motorcycle and no indication was given that another motor vehicle was involved. Accordingly, a review of the record evidence as a whole confirms that defendant was well able to present evidence questioning Clark's recitation of the motorcycle crash and to undermine her testimony that an unknown SUV caused Wojcik to lose control of the motor vehicle. Finally, as Clarke and Wojcik point out in their briefs on appeal, Clarke's allegations against Wojcik in her complaint were consistent with her trial testimony, in that she alleged that the motorcycle collision was caused as Wojcik attempted to avoid the SUV. Under such circumstances, we are not persuaded that setting aside the jury's verdict is warranted. MCR 2.613(A).

### III. BURDEN OF PROOF

Defendant also alleges that Wojcik's counsel engaged in conduct meant to mislead the jury on the correct burden of proof for plaintiffs in this civil trial. We disagree.

### A. STANDARD OF REVIEW

Defendant failed to object to counsel's alleged misconduct at trial, rendering this issue unpreserved. *Badiee v Brighton Area Schs*, 265 Mich App 343, 373; 695 NW2d 521 (2005). When reviewing an unpreserved claim of attorney misconduct, this Court will hold that reversal is warranted only where "(1) the remarks were so prejudicial as to have denied the party a fair trial and . . . (2) any resulting prejudice could not have been cured by a curative instruction." *Id.* at 373-374.

### B. ANALYSIS

It is well settled that the burden of proof in civil cases is the preponderance of the evidence standard. *In re Guardianship of Redd*, 321 Mich App 398, 409; 909 NW2d 289 (2017). Therefore, in this case, plaintiffs were required to prove by a preponderance of the evidence that the injuries they sustained arose "out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." MCL 500.3105(1). Accordingly, Wojcik's and Clarke's entitlement to benefits hinged on their ability to prove that the accident in question involved a motor vehicle.

The thrust of defendant's argument on appeal is that Wojcik's counsel engaged in a strategy to mislead the jury into believing that an injured motorcyclist is entitled to no-fault PIP benefits if he shows that there existed even a scintilla of evidence of a motor vehicle's involvement. After a review of the entire record, we recognize that many of the statements made by Wojcik's counsel were not entirely consistent with MCL 500.3105, which governs the payment of no-fault benefits. This statutory provision requires that a plaintiff show both that "the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident[,]" and that "the injuries [arose] out of or [were] caused by the ownership, operation, maintenance, or use of a motor vehicle." *Douglas v Allstate Ins Co*, 492 Mich 241, 257; 821 NW2d 472 (2012) (quotation marks, citation, and alterations omitted). These causal

connections must be proven by a preponderance of the evidence.  See *Redd*, 321 Mich App at 409.

We are not persuaded that the conduct at issue in this case rises to the level of egregious conduct that would warrant reversal.  Our conclusion is supported by a comparison to other cases from the Michigan Supreme Court and this Court.  For example, in *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 104-111; 330 NW2d 638 (1982), the plaintiff's attorney made improper reference to worker's compensation benefits and large monetary verdicts in other similar cases, claimed that the defendant had engaged in a cover-up and committed perjury, and commented on the defendant's vast corporate wealth.  *Id*. at 104-110.  The Michigan Supreme Court found that some of the errors could have been "readily cured" by an instruction from the bench.  *Id* at 105.  However, the *Reetz* Court ultimately held that where some of the improper comments were so numerous that curative instructions would not have alleviated any prejudice and their pervasive negative impact was "indelibly impressed on the juror's consciousness[,]" reversal was required.  *Id*. at 106, 111-113.  Similarly, in *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 293-294; 602 NW2d 854 (1999), this Court overturned a jury verdict on the basis of extreme misconduct by the plaintiff's counsel.  There, the attorney, "through innuendo and direct attack," repeatedly accused the defendants and their witnesses of "conspiracy, collusion, and perjury to cover up their alleged malpractice," "belittled" defense witnesses, insinuated "outrageously" that a sexual tryst involving a doctor occurred leading to malpractice, and "argued that money and greed were the defendants' prime motivation[.]"  *Id*. at 290-291.  This Court held that the "accusations, allegations, and insinuations had no reasonable basis in the evidence presented and were completely improper."  *Id*. at 291.

Notably, the conduct at issue in this case did not include attacks on any witnesses, *Badalamenti*, 237 Mich App at 291, and there is no indication from the record that the jury was distracted from deciding the key issues in the case.  *Wayne Co Bd of Rd Comm'rs v GLS LeasCo, Inc*, 394 Mich 126, 132-133; 229 NW2d 797 (1975).  Had defendant raised an objection, these misstatements could have been "readily cured" by an instruction from the trial court.  *Reetz*, 416 Mich at 105.  Moreover, the challenged comments were not so inflammatory or pervasive that a curative instruction would have been futile.  *Id*. at 106.  Put simply, counsel's conduct was not "truly egregious" and did not exceed the bounds of what is permissible and appropriate.  Cf *Badalamenti*, 237 Mich App at 289.  Moreover, counsel for each plaintiff correctly expressed their burden of proof during closing arguments and, most importantly, the trial court instructed the jury on the proper burden of proof.[4]  "[J]urors are presumed to follow their instructions[,]" and defendant is therefore hard-pressed to assert that it was prejudiced by any alleged errors or that the alleged errors impacted the outcome of the jury's verdict.  *Lenawee Co v Wagley*, 301 Mich App 134, 161; 836 NW2d 193 (2013).  Accordingly, reversal of the jury's verdict is not warranted.

---

[4] The trial court did so on three separate occasions.  First, before the jury was empaneled, second, during its preliminary instructions, and third, during its final instructions.

Affirmed. Plaintiffs, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood