*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WENDY TALAN,

        Plaintiff-Appellant/Cross-Appellee,

v

SHEILAH MARIE STEWART,

        Defendant-Appellee/Cross-
        Appellant,

and

PROGRESSIVE INSURANCE COMPANY and
PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

        Defendants.

UNPUBLISHED
August 6, 2019

No. 342268
Oakland Circuit Court
LC No. 2016-153055-NI

Before: GADOLA, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right a judgment of no cause of action on a jury verdict entered in
favor of defendant in this action for third-party no-fault benefits brought by plaintiff for injuries
sustained in a motor vehicle accident. On cross-appeal, defendant appeals the trial court's
judgment against plaintiff for taxable costs and attorney fees. We affirm.

## I. BACKGROUND FACTS

This case arises out of a motor vehicle accident that occurred on December 24, 2014, at
approximately 8:00 a.m. on a damp, dark, misty morning. Plaintiff had taken her dogs on their
routine morning walk and was on her way home. Plaintiff had the two approximately 20-pound
dogs on loose leashes next to her and was standing on the shoulder of Middlebelt waiting to
cross the road when she was struck by a car driven by defendant. Plaintiff was knocked down
into the gravel, suffered injuries including a broken clavicle, and both dogs were killed.

-1-

Defendant testified that she had not seen plaintiff at any point while she was driving, but she stopped her car after she heard a "thump, thump," and went to check on what she struck. The only damage to defendant's car that was immediately visible was broken glass in the passenger-side mirror. Plaintiff testified at trial that the dogs did not pull her into the roadway and did not recall telling anyone at the scene that they did. Others at the scene, including a police officer and paramedic, testified that plaintiff told them at the scene that her dogs pulled her toward the road.

The jury found defendant not negligent. Plaintiff filed a motion for new trial on the basis of alleged irregularities that occurred during the jury trial. The trial court denied plaintiff's motion. Noting that both parties rejected case evaluation, defendant filed a motion for reasonable attorney fees and costs. The trial court granted defendant's motion, but reduced the amount of fees and costs awarded to defendant. Plaintiff now appeals as of right and defendant cross-appeals as of right.

## II. JUROR DISQUALIFICATION

Plaintiff contends that the trial court abused its discretion by denying her motion for a new trial based on evidence that a juror indicated that he lived in Illinois but could not change his address because he was on his parents' medical insurance. Plaintiff also claims that an "obvious atmosphere of bias" already existed in the trial as a result of previous comments made by jurors who had already been excused, so when the juror from Illinois expressed his concerns, the trial court should have sua sponte acted and declared a mistrial. Defendant responds that the trial court did not abuse its discretion by retaining a juror who was a potential nonresident when plaintiff did not object to the juror's retention and when the juror did not actually prejudice plaintiff's cause of action. Also, defendant argues that plaintiff has raised no other cognizable argument or presented any record evidence supporting assertions that an impermissible "atmosphere of bias" existed at trial and prejudiced plaintiff.

An issue is preserved for appellate review when it is raised, addressed, and decided in the trial court. *Henderson v Dep't of Treasury*, 307 Mich App 1, 7-8; 858 NW2d 733 (2014). Plaintiff did not raise the issue of juror statements creating an impermissible "atmosphere of bias" during trial but did raise the issue in her motion for new trial. The trial court denied plaintiff's motion for new trial based on that issue and, thus, that portion of the issue is preserved for this Court's review. Plaintiff did not object to the potential residency issue at trial and did not raise it in her motion for new trial, thus, that portion of this issue is not preserved for this Court's review.

This Court reviews a trial court's decision to deny a motion for a new trial based on juror bias or misconduct for an abuse of discretion. *Froede v Holland Ladder & Mfg Co*, 207 Mich App 127, 130; 523 NW2d 849 (1994). A trial court abuses its discretion when it "chooses an outcome falling outside the range of principled outcomes." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010).

During voir dire, Juror 217 reported that he was a Ph.D. student in psychology attending Northern Illinois University, was a graduate teaching assistant, and was presently on break from school. The juror indicated that he intended to be fair and follow the law as instructed by the trial court. When the trial court asked plaintiff's counsel if he had any challenges for cause as to

Juror 217, plaintiff's counsel responded that he did not. Juror 217 joined the jury. On the third day of trial, Juror 217 submitted a note to the trial court. The trial court read the note into the record and then discussed it with counsel:

> *Trial Court*: Okay. As it stands, I live in Illinois . . . . Obviously, he hasn't changed his residency. And I'm supposed to be working on an associateship through Northern Illinois University. When I was interviewed, I was under the impression that . . . coming in on Monday was not guaranteed and it would be a half day, at most. Given that I need to study for my comprehensive exam, need to work on my thesis, need to work on my—I don't know if that's associateship or assistantship—and have a six-hour-long drive home. And is it reasonable to assume that I'll be able to return to work no later than Tuesday morning? Please note I cannot work on my associateship from home due to confidentiality. Also please know that the only reason I'm here is that I'm not technically in class. I'm essentially in school 365 days a year for my program. I'm on parents' insurance so I cannot change my address. In other words, the least inconvenient time is still inconvenient, and a prolonged trial may put my education and ability to pay my bills in danger. Again, I was under the impression that we would be done at the latest by Monday at noon. And I did not protest for fear of being placed on a different jury that could have a longer case. I promise I'm not trying to be disrespectful. . . . I'm just really legitimately concerned about my . . . education and financial well-being at this point. Could I perhaps Skype in for future jury dates? Is my gas for the 600-plus miles I drove from DeKalb, Illinois reimbursed?

> *Plaintiff's Counsel*: Well, that's the first time in my career I've ever heard of a . . . juror wanting to absentee vote?

> *Trial Court* (To the clerk) Will you go line them up and bring them in?

> *Defense Counsel*: I think we're going to be done sometime Monday.

> *Plaintiff's Counsel*: I do, too. . . . But you never told him he was guaranteed to be done by (indiscernible).

> *Trial Court*: No. But at this point—

> *Defense Counsel*: He's going to school—

> *Trial Court*: —he's staying on.

> *Defense Counsel*: He's the guy with the neuropsych—

> *Plaintiff's Counsel*: Right.

> *Defense Counsel*: —Ph.D. from North Illinois University.

-3-

> *Plaintiff's Counsel*: Correct. And it's comforting to know that he's going to have a Ph.D. in psychology.

In accordance with MCR 2.611(A)(1)(b), a motion for a new trial may be premised on juror misconduct. Civil litigants have the right to trial before a fair and impartial jury unless the parties waive that right. Const 1963, Art 1, §14. A juror is presumed to be qualified and competent to serve, and the burden is on the challenging party to establish otherwise. *Froede*, 207 Mich App at 130. To rebut this presumption, the challenging party must establish that (1) the juror would have been excused for cause, (2) the juror would have been otherwise dismissed, or (3) the party was actually prejudiced. *Id*. Plaintiff maintains that the trial court should have sua sponte declared a mistrial when it learned that Juror 217 allegedly did not meet the residency requirement to serve on the jury. Indeed, MCL 600.1307a provides that "[t]o qualify as a juror, a person shall . . . [b]e a citizen of the United States, 18 years of age or older, and a resident in the county for which the person is selected[.]" However, MCL 600.1354 also provides that a "[f]ailure to comply with the provisions of [the Revised Judicature Act] shall not be grounds for a continuance nor shall it affect the validity of a jury verdict unless the party requesting the continuance or claiming invalidity has made timely objection and unless the party demonstrates actual prejudice to his cause and unless the noncompliance is substantial."

A juror must answer questions truthfully. See, e.g. *Froede*, 207 Mich App at 140. However, a false statement, standing alone, is an insufficient basis on which to set aside a jury's verdict. *Id*.

The record does not support plaintiff's position that the juror in question gave false answers to any questions during voir dire or otherwise prevented plaintiff from reasonably deciding whether to exercise a peremptory challenge. During voir dire, plaintiff questioned the jury members. The juror in question revealed during voir dire that he was a Ph.D. student and teaching assistant at Northern Illinois University. Plaintiff's counsel asked him if he was "on a break right now, correct?". The juror answered in the affirmative. Plaintiff did not question the juror further about his residency even though it was clear that the juror was a doctoral student in another state. Plaintiff assented to the juror being placed on the jury after being aware of that fact. Later, on the third day of trial, the juror revealed that he was "not technically in class" and that is why he could serve on the jury, but it was still "inconvenient" because of his Ph.D. program in Illinois. The juror also stated that he was on his "parents' insurance so [he] cannot change [his] address." The juror's statements are consistent and plaintiff may not fault the juror for failing to answer residency questions that plaintiff failed to ask. Diligence during voir dire extends to making "a careful inquiry of a prospective juror under oath." *Gustafson v Morrison*, 57 Mich App 655, 663; 226 NW2d 681 (1975). By neglecting to question the juror regarding his residency status and whether he was a resident of Oakland County for purposes of MCL 600.1307a, plaintiff failed to exercise due diligence. Accordingly, it was plaintiff's responsibility to delve into the residency issues and not the trial court's responsibility as plaintiff argues on appeal.

Additionally, plaintiff has neither argued that she was actually prejudiced nor established any indications of actual prejudice such that she was denied an impartial jury. See *People v Miller*, 482 Mich 540, 548; 759 NW2d 850 (2008) ("A juror's failure to disclose information that the juror should have disclosed is only prejudicial if it denied the defendant an impartial jury.").

-4-

For these reasons, we reject plaintiff's argument that the jury selection in this case deprived her of a fair trial.

With regard to the alleged "atmosphere of bias," plaintiff alleges that several prospective jurors made statements during voir dire that were so egregious that the trial court should have granted a mistrial sua sponte, even though plaintiff did not object to the offending statements. Plaintiff points to the statements of Juror 5, who stated outside of the presence of the other jurors that he was biased against plaintiff's law firm because he thought it was a "fraud", did not like the firm's advertisements, and also had philosophical problems with personal injury lawsuits. The trial court excused the juror for cause. Juror 15 also stated that she had problems with personal injury law, possibly for religious reasons, because it has had negative effects on society as a whole and turned society upside down because everyone is suing each other because of a lack of personal responsibility. The trial court removed the juror for cause. Juror 208 explained that, while on a walk with her dog, a woman tried to pet her dog, and then the dog bit the woman puncturing the skin. Juror 208 was very upset that the woman chose to file a lawsuit against her rather than working it out between the individuals. Plaintiff's counsel asked the juror follow-up questions and then later removed Juror 208 via peremptory challenge.

While the record supports plaintiff's assertions that jurors made some comments that were not supportive of personal injury law in general, plaintiff has failed to provide a factual basis for her assertions that the comments were so poisonous that the trial court, even without a motion from plaintiff, should have sua sponte ordered a mistrial. The comments were not related to the parties in this case, the circumstances in this case, or the evidence in this case. As the party seeking reversal on appeal, plaintiff is responsible for providing this Court with a factual basis for her argument. *Petraszewsky v Keeth*, 201 Mich App 535, 540; 506 NW2d 890 (1993). Because plaintiff has failed to provide a factual basis, she has not met her burden and established error on the part of the trial court.

## III. JUDICIAL MISCONDUCT

Plaintiff next contends that the trial court erred when it restricted counsel to 30 minutes in total for closing argument and rebuttal. Defendant responds that the trial court did not engage in judicial misconduct by restricting counsel to 30 minutes in total for closing argument and rebuttal when 30 minutes was an adequate length of time for the parties to present their closing arguments. Whether judicial misconduct denied a party a fair trial presents a constitutional question subject to review de novo. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).

A trial judge must act as a neutral and detached judicial officer. See *Cain v Dep't of Corrections*, 451 Mich 470, 509; 548 NW2d 210 (1996). When evaluating a claim of judicial bias, the appellate court must consider the totality of the circumstances to determine whether "the judge demonstrated the appearance of advocacy or partiality on the whole." *Stevens*, 498 Mich at 172.

> [T]he reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues

therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. . . . Reviewing courts may consider additional factors if they are relevant to the determination of partiality in a particular case. . . . The reviewing court must consider the relevance and weigh the significance of each factor under the totality of the circumstances of the case. [*Id.* (citations omitted).]

"A trial judge is presumed to be impartial and the party who asserts partiality has a heavy burden of overcoming that presumption." *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009).

At the close of the third day of trial, the parties had the following exchange outside the presence of the jury:

> *Trial Court*:   How long do you think closings will be? [Plaintiff's counsel]?

> *Plaintiff's Counsel:*  Preliminarily, 45 minutes.

> *Trial Court*:  Okay.  You're limited to a half hour.  And [Plaintiff's counsel], that includes any rebuttal.  All right?  So no more than a half hour each side.

> *Plaintiff's Counsel:*  If I am limited to the same amount time as brother counsel, then I don't get a rebuttal.

> *Trial Court*:  [Plaintiff's counsel], 30 minutes both sides.

> * * *

> *Trial Court*:  [Plaintiff's counsel], just so that we're clear, I'm not . . . telling you you don't have a rebuttal.  I'm saying you have 30 minutes, and you can choose to use however much you want for closing and how much ever you want for your rebuttal; but all total, between the two, it should be no more than 30 minutes.

> *Plaintiff's Counsel*:  I thought you meant that, your Honor.  But I'm objecting because effectively it gives me the same amount of time as brother counsel.  And I don't think that that is what the law is supposed to reflect.

> *Trial Court*:  Okay.  All right.  See you all Monday morning.

MCR 2.513(L) provides that "[t]he court may impose reasonable time limits on the closing arguments."  And, MCR 2.507(F) states the following: "The court may limit the time allowed each party for opening statements and final arguments.  It shall give the parties adequate time for argument, having due regard for the complexity of the action, and may make separate time allowances for co-parties whose interests are adverse."  The trial court was empowered to limit the time for closing arguments under the court rules so long as the time given was adequate to the complexity of the case and reasonable to the parties' adverse interests.  While plaintiff was

dismayed at the time limit of 30 minutes, rather than the requested 45 minutes, our review of the record reveals that the trial court acted appropriately and reasonably considering the length of the trial, the complexity of the facts and issues in the case, and the trial court's tone and demeanor managing the jury trial.

Our review of plaintiff's closing argument shows that plaintiff's counsel effectively argued plaintiff's theory of the case, that plaintiff was standing on the side of the road visible to traffic but was run down because of defendant's lack of due care, referenced specific witness testimony buttressing his argument, and did so efficiently in the time allotted. Further, plaintiff's counsel presented an effective rebuttal countering defendant's argument by referencing testimony, medical records, and reiterating plaintiff's theory of the case. On this record, we conclude that plaintiff has not shown that the trial court was biased against her or denied plaintiff a fair trial when it limited the time for closing arguments to 30 minutes. *Stevens*, 498 Mich at 172.

## IV. ATTORNEY MISCONDUCT

Next, plaintiff contends that improper comments made by defense counsel denied plaintiff a fair trial. To preserve a claim of attorney misconduct in a civil case, a party must object to the conduct and request a curative instruction or move for a mistrial. *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 103; 330 NW2d 638 (1982). Because plaintiff failed to object to defense counsel's alleged misconduct at trial or move for a mistrial, this issue is unpreserved. *Id*. When reviewing an unpreserved claim of attorney misconduct, this Court will hold that reversal is warranted only where "(1) the remarks were so prejudicial as to have denied the party a fair trial and . . . (2) any resulting prejudice could not have been cured by a curative instruction." *Badiee v Brighton Area Sch*, 265 Mich App 343, 373-374; 695 NW2d 521 (2005).

Before opening statements, the trial court instructed the jury:

There are some things presented in the trial that are not evidence, and I will now explain what is not evidence:

The lawyers' statements, commentaries and arguments are not evidence. They are only meant to help you understand the evidence and each side's legal theory.

You only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge. However, an admission of fact by a lawyer is binding on his or her client.

During opening statements, plaintiff's counsel stated that defense attorneys engage in "parlor tricks." At the beginning of defendant's opening statement, defense counsel stated:

There are no parlor tricks here. And I personally resent that claim. This case turns on the credibility of the plaintiff. What's reasonable and probable? What's more likely than not? What makes common sense that happened here, given the facts that you have to piece together from her, my client, Mrs. Wright, the EMT, and the police officer, as well as the physical evidence you have from

the damage to my client's car, the fact that two dogs got killed, how does that happen? Where was my client on that road for that to happen?

Now, if the facts were as the plaintiff's attorney has so eloquently portrayed them to be, we wouldn't be here today. This would have been over long ago. But he has only told you part of the story, the part that satisfies his version of events.

Plaintiff's counsel did not object.

During closing arguments, defendant's counsel stated:

This was caused entirely by Wendy Talan and her sole negligence. She stood within six to eight inches of a very busy road and had her dogs on a light leash, she said, not holding it tightly; and these dogs pulled her arm out into the road, not the middle of the road as [plaintiff's counsel] would have you believe, otherwise she would be dead. If you get hit by a car at 40 miles an hour on the side of your leg, you've got more than a broken collarbone. It just makes sense.

* * *

What you're hearing from the plaintiff's side of it, is something we've been hearing in the political arena, it's called alternative facts. You've all heard it. And you can look at what the plaintiff has testified to and compare how she dissembles and kind of has an answer for everything in terms of what happened, even though she doesn't remember much about what happened that night . . . .

She now says that somehow somebody suggested to her, for the first time here at trial, that, hey, a woman said the only way this could happen is if your dogs pulled out into the road, and she knew that wasn't true, she admitted, but yet tells us that she apparently adopted it by telling Teresa Wright on two occasions, my client on one occasion, the EMT, and the police officer. Does that make sense? Does any of that make sense? She adopts the statement that she knows is false; and finally tries to correct it here at trial and tell you, oh, for the first time I remember a woman told me that's what happened. But didn't bother to correct anything for two-and-a-half years.

* * *

You can take into account, again, a jury instruction, the credibility of witnesses. Their ability to—The person's ability to—and opportunity to observe, his or her memory, the manner while testifying, any interest or bias, or prejudice, and the reasonableness of that testimony.

Again, it's unreasonable for the plaintiff to start filling in things.

Like Tim Brown, 27-year veteran of the state police, investigated hundreds if not thousands of accidents, and he says the best time to figure out

what happened is the day of the accident, shortly after, ask witnesses, ask them what happened then, because as time goes on, you start to fill in, you start trying to figure out, well, what really happened, I'm not sure, but maybe this, maybe that. And you start making up facts, alternative facts. And that's what the plaintiff has done.

* * *

How credible is it for her to say she doesn't remember and (indiscernible) to the reasonableness, what do you think is reasonable and probable? She says she got hit on the right shoulder. Well, my client's (indiscernible) left to right would have hit her on the left shoulder but the left shoulder's way too high for that mirror. The mirror's down here at about three foot long, three foot six, which is right about here if you're getting pulled in. And if it would have hit her, you figure it out: What do you think is reasonable and probable if a car hits you at 40 miles an hour on your left knee, the front (indiscernible), what do you think the injuries would be here? We wouldn't be talking about a personal-injury case. We'd be talking about a death case, maybe. It didn't happen. Alternative facts.

* * *

And then you look at the Glasgow Coma Scale. The verbal response, mental response, she scored perfectly: normal conversation, normal mentation . . . So, if you've got a closed-head injury and are confused, you would know it. He's been doing this for 20 years. Alternative facts. That's what we've got going here. Someone who lost her dogs, emotionally upset about it, and I can understand that; but to go after my client for something she didn't do is unacceptable. We shouldn't be here.

* * *

Finally, in the Catholic Church there's somebody called the devil's advocate, and that's a person who the Pope appoints to poke holes in the story or someone up for beatification, someone up for sainthood; and that person's there to say, no, they didn't do this; they shouldn't be a saint because of that. The plaintiff is no saint.

This is my last time to talk to you. I want you to sit here when [plaintiff's counsel] gets up and tries to poke holes in what I told you and what I think is reasonable and probable, and I think the evidence shows that, and ask yourself those hard questions: But what about this? What about that? And it should allow you to come to the conclusion that the plaintiff is no saint. She's entirely responsible for this accident.

Plaintiff's counsel did not object to any of defense counsel's statements and began his rebuttal argument, including the following:

Brother counsel says that this accident was entirely Wendy's fault. Who's into alternative facts? I told you what the law is and what you can do. And I even conceded that you might find differently than I think. I'm not into alternative facts. And neither is Wendy. The defense team is into alternative facts.

* * *

Finally, I am not a devil's advocate. I'm an advocate of Wendy Talan's. Wendy Talan is not a saint. None of us are. She's just a good person who was unduly wronged by a negligent person who wasn't doing what a reasonably prudent person would do, which is look out ahead of you on the roadway.

She didn't—Remember that one question I asked, this is not a whack-a-mole situation. She didn't just pop all of a sudden. She was there for hundreds and hundreds of yards that morning time, 35 miles an hour, over 500 feet before the scene of the accident. That's how long she had an opportunity to just make an observation of what was there to be seen.

Alternative facts are possessed on the other side, not on this side.

After closing arguments, the trial court read the jury instructions to the jury. The trial court asked plaintiff and defendant if they were satisfied with the instructions as read. Both parties verbally responded in the affirmative.

Plaintiff contends that defense counsel's repeated prejudicial comments referencing a politically-charged phrase, namely "alternative facts" and likening plaintiff's counsel to "a devil's advocate," evidenced a deliberate attempt to deprive plaintiff of a fair trial. However, we are not persuaded that the conduct at issue in this case rises to the level of egregious conduct that would warrant reversal. This conclusion is supported by a comparison to other cases from the Michigan Supreme Court and this Court.

In *Reetz*, 416 Mich at 104-111, the plaintiff's attorney made improper reference to worker's compensation benefits and large monetary verdicts in other similar cases, claimed that the defendant had engaged in a cover-up and committed perjury, and commented on the defendant's vast corporate wealth. *Id*. at 104-110. The Michigan Supreme Court found that some of the errors could have been "readily cured" by an instruction from the bench. *Id*. at 104-105. However, the *Reetz* Court ultimately held that, where the improper comments were so numerous that curative instructions would not have alleviated any prejudice and their pervasive negative impact was "indelibly impressed on the juror's consciousness[,]" reversal was required. *Id*. at 106, 111-112.

Similarly, in *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 293-294; 602 NW2d 854 (1999), this Court overturned a jury verdict on the basis of extreme misconduct by the plaintiff's counsel. In *Badalamenti*, the attorney, "through innuendo and direct attack," repeatedly accused the defendants and their witnesses of "conspiracy, collusion, and perjury to cover up their alleged malpractice", "belittled" defense witnesses, insinuated "outrageously" that a sexual tryst involving a doctor occurred leading to malpractice, and "argued that money and greed were the defendants' prime motivation[.]" *Id*. at 290-291. This Court held that the

"accusations, allegations, and insinuations had no reasonable basis in the evidence presented and were completely improper." *Id.* at 291.

The conduct at issue in this case did not include attacks on any witnesses, and there is no indication from the record that the jury was distracted from deciding the key issues in the case. The jury sat through three days of testimony regarding the accident, reconstruction of the accident scene, the injuries plaintiff claimed to have sustained from the accident, the seriousness of those injuries, and their impact on plaintiff's life. The jury was well versed in the facts of the case and well prepared to make credibility determinations based on the evidence presented rather than attorney argument. The challenged comments were not so inflammatory or pervasive that a curative instruction would have been futile. *Reetz*, 416 Mich at 106. To the extent the challenged statements were improper, any ill-effect could have been cured by a curative instruction had plaintiff so requested. *Reetz*, 416 Mich at 105; *Badiee*, 265 Mich App at 374. "[J]urors are presumed to follow their instructions[.]" *Lenawee Co v Wagley*, 301 Mich App 134, 161; 836 NW2d 193 (2013).

Put simply, counsel's conduct was not "truly egregious" and did not exceed the bounds of what is permissible and appropriate. *Badalamenti*, 237 Mich App at 289. Plaintiff is therefore hard-pressed to assert that she was prejudiced by any alleged errors or that the alleged errors impacted the outcome of the jury's verdict. Accordingly, alleged improper comments by defense counsel did not deny plaintiff a fair trial and interference with the jury's verdict is not warranted.

## V. ATTORNEY FEES AND COSTS

On cross-appeal, defendant argues that the trial court abused its discretion by limiting the attorney fees and costs awarded to defendant. Plaintiff responds that the trial court did not abuse its discretion when it determined a reasonable attorney fee and costs award in favor of defendant. Defendant sought an attorney fee award of $85,555 consisting of 171.1 hours at $500 per hour and taxable costs in the amount of $6,964.25. Ultimately, the trial court awarded attorney fees in the amount of $27,500 and costs in the amount of $5,975.50 in favor of defendant.

We review for an abuse of discretion the reasonableness of a trial court's award of costs and attorney fees. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "A trial court abuses its discretion when it chooses an outcome falling outside the range of reasonable and principled outcomes, or when it makes an error of law." *Thomas M. Cooley Law Sch v Doe 1*, 300 Mich App 245, 263; 833 NW2d 331 (2013). A trial court's factual findings regarding an award of attorney fees are reviewed for clear error. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 296; 769 NW2d 234 (2009). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Id.* (quotation marks and citation omitted).

Generally, when a party contests requested attorney fees, the trial court is obligated to conduct a hearing to determine what services were rendered and the reasonableness of the services. *Reed v Reed*, 265 Mich App 131, 166; 693 NW2d 825 (2005). However, when, as here, a trial court has before it evidence sufficient to determine the amount of attorney fees and

costs, it is not required to hold an evidentiary hearing. *Cassidy v Cassidy*, 318 Mich App 463, 488; 899 NW2d 65 (2017).

In *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 283; 884 NW2d 257 (2016), our Supreme Court reaffirmed that consideration of the reasonableness of attorney fees is determined using the procedures set forth in *Smith*, 481 Mich 519. In *Smith*, the Court noted that trial courts must "consider the totality of special circumstances applicable to the case at hand." *Smith*, 481 Mich at 529. The *Smith* Court directed trial courts to consider the following six factors described in *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982):

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.

The *Smith* Court also directed trial courts to consider the factors listed in Rule 1.5(a) of the Michigan Rules of Professional Conduct, which include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

> (4) the amount involved and the results obtained;

> (5) the time limitations imposed by the client or by the circumstances;

> (6) the nature and length of the professional relationship with the client;

> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

> (8) whether the fee is fixed or contingent. [MRPC 1.5(a); *Smith*, 481 Mich at 529-530.]

After noting that the multifactor approach needed "some fine-tuning," the *Smith* Court held that a trial court must begin its reasonableness analysis "by determining the fee customarily charged in the locality for similar legal services" and then multiplying that number "by the reasonable number of hours expended in the case." *Smith*, 418 Mich at 530-531. Then, "[a]fter a trial court has calculated this baseline figure, it must consider and briefly discuss on the record the remaining *Wood* factors and the factors in MRPC 1.5(a) to determine whether any up or down adjustments from the base number are appropriate." *Pirgu*, 499 Mich at 275-276, citing *Smith*, 418 Mich at 431, 433.

In the present case, in a nine-page written opinion, the trial court explicitly acknowledged that its determination of the reasonableness of defendant's request for attorney fees was subject to the procedure outlined in *Smith* before proceeding to conduct an examination of the listed factors. The trial court began its analysis by determining a reasonable hourly rate for defense counsel, based on length of practice, expertise, practice area, as well as various mean billing rates for attorneys with similar attributes and experiences in the area. The trial court reduced the number of hours based on the time and labor required and the lack of novelty of plaintiff's case after finding that defendant's requested number of hours was excessive. Additionally, the trial court reduced the award of costs for expert witness Brown, finding a portion of the costs not compensable as expert fees. While the trial court could have provided even more detail to assist this Court's review of its fees and costs determination on appeal, we cannot conclude on this record that the trial court abused its discretion when it awarded defendant attorney fees in the amount of $27,500 and costs in the amount of $5,975.50 after determining that such an amount was reasonable.

Affirmed.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ James Robert Redford

-13-