*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ABRAHAM PETER WALKER,

        Plaintiff-Appellant,

v

DAMARIUS DEANDRE HALTY and SABRINA
HALTY,

        Defendants-Appellees.

UNPUBLISHED
May 20, 2025
11:11 AM

No. 369015
Macomb Circuit Court
LC No. 2022-000343-NI

Before: GADOLA, C.J., and MURRAY and REDFORD, JJ.

PER CURIAM.

Plaintiff, Abraham Peter Walker, appeals the judgment of no cause of action after a jury found defendants were not liable to plaintiff for negligence or owner liability. On appeal, plaintiff asserts that the trial court deprived him of a fair trial because it limited his ability to conduct voir dire, allowed defense counsel to be impermissibly argumentative during opening statements, and limited the time allotted for closing arguments. We affirm.

## I. FACTS

This case arises from a motor vehicle accident that occurred in September 2019. Plaintiff was driving on southbound Gratiot Avenue when he was rear-ended by defendant Damarius Halty, who was driving a car owned by his mother, defendant Sabrina Halty. While driving in the far right lane and preparing to turn into the parking lot of a tire store, plaintiff came to a sudden stop and Damarius rear ended him. Police responded to the scene, but neither party received medical treatment and they were able to drive their respective vehicles home. Later that day, plaintiff's neck started to feel sore and he went to the emergency room. Plaintiff received an x-ray and was prescribed muscle relaxers, but was not admitted to the hospital.

In January 2022, plaintiff brought a negligence claim against Damarius, and an owner liability claim against Sabrina, claiming that Damarius's negligence caused him to suffer "serious and permanent injuries" to his neck and spine requiring surgery. Alternatively, plaintiff contended that Damarius's negligence exacerbated any preexisting conditions plaintiff had before the accident. Trial was held in November 2023. At the beginning of trial, the court indicated that it

-1-

would conduct voir dire, but allow the attorneys to question the jurors afterwards. Neither party challenged this procedure. During voir dire, the trial court asked potential jurors questions and the parties were then both given an opportunity to question the jurors. During plaintiff's questioning, the trial court interrupted, claiming one of the questions counsel posed had already been answered. Plaintiff's counsel was later permitted to ask individual jurors follow up questions regarding their employment and potential biases, and exercised three peremptory challenges. At the conclusion of voir dire, the parties expressed satisfaction with the empaneled jury.

During opening statements, the parties presented their theories of the case. However, plaintiff challenged defense counsel's opening statement, claiming it was argumentative, lacked factual statements, unfairly attacked plaintiff's character, and bolstered the credibility of defendants' expert witness. The trial court overruled plaintiff's objection because it had instructed the jury that the attorney's arguments were not to be considered as evidence.

Additionally, throughout the proceedings the court reprimanded the parties for slowing the pace of trial. In fact, the trial court threatened to hold plaintiff's counsel in contempt for arriving late to court. After the parties reviewed and expressly approved the jury instructions, the trial court said that both parties would have 30 minutes for closing argument and 10 minutes for rebuttal. Plaintiff's counsel challenged this ruling, claiming defense counsel did not have a right to present a rebuttal. The trial court later indicated that plaintiff would have 30 minutes for his closing argument and 10 minutes for his rebuttal, and the defense would have 40 minutes for its closing. The jury found defendants were not negligent. Based on the verdict, the trial court entered a judgment of no cause of action in favor of defendants. Plaintiff now appeals.

## II. VOIR DIRE

Plaintiff contends that the trial court abused its discretion by restricting his trial counsel's ability to adequately conduct voir dire. During trial, plaintiff never objected to the trial court's decision to question the jurors directly during voir dire, and expressed satisfaction with the empaneled jury. Therefore, this argument is waived and we need not consider it. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023); see also *Varran v Granneman*, 312 Mich App 591, 623; 880 NW2d 242 (2015) (" 'One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.' ") (citation omitted).

Even if plaintiff had not waived this issue, he is not entitled to relief on appeal because the trial court conducted voir dire in accordance with MCR 2.511(C), and allowed "the elicitation of enough information so that the court itself [could] make an independent determination of a juror's ability to be impartial." *People v Tyburski*, 445 Mich 606, 620; 518 NW2d 441 (1994). Moreover, the record demonstrates plaintiff's counsel was given an opportunity to individually question jurors and exercised three peremptory challenges. Any limits imposed by the trial court on plaintiff's conduct during voir dire was to reduce the redundancy of questions asked and did not interfere with plaintiff's right to an impartial jury.

## III. OPENING STATEMENTS

Plaintiff asserts that the trial court erred by allowing defense counsel to be impermissibly argumentative during his opening statement. We disagree.

## A. STANDARDS OF REVIEW

In civil cases, claims of attorney misconduct are reviewed as follows:

> [T]he appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted. Tainted verdicts need not be allowed to stand simply because a lawyer or judge or both failed to protect the interests of the prejudiced party by timely action. [*Guerrero v Smith*, 280 Mich App 647, 651-652; 761 NW2d 723 (2008), citing *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 102-103; 330 NW2d 638 (1982).]

Here, plaintiff objected to defense counsel's opening statement, but he did not request a curative instruction or move for a mistrial. Therefore, our review is for harmless error. *Id*. "An error is harmless if it was not decisive to the outcome of the case." *K2 Retail Constr Servs, Inc v West Lansing Retail Dev, LLC*, __ Mich App__, __; __ NW3d __ (2025) (Docket No. 367762); slip op at 14 (citation omitted).

## B. ANALYSIS

"[T]he purpose of an opening statement is to tell the jury what the advocate will attempt to prove." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 503; 668 NW22d 402 (2003). See also MCR 2.507(A). It is improper for a party to appeal to the sympathy of the jury during an opening statement, or to denigrate the other party. See *Rogers v Detroit*, 457 Mich 125, 147, 149; 579 NW2d 840 (1998), overruled on other grounds by *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000). However, an attorney is permitted to argue or suggest that a witness may not be being truthful when witness credibility is a pertinent issue in the case, *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 25-26; 837 NW2d 686 (2013).

In *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 293-294; 602 NW2d 854 (1999), this Court overturned a jury verdict on the basis of extreme misconduct by the plaintiff's counsel. In *Badalamenti*, the attorney, "through innuendo and direct attack," repeatedly accused the defendants and their witnesses of "conspiracy, collusion, and perjury to cover up their alleged malpractice"; "belittled" defense witnesses; insinuated that a sexual affair involving a doctor occurred leading to malpractice; and "argued that money and greed were the defendants' prime motivation[.]" *Id*. at 290-291. This Court held that the accusations and insinuations had no reasonable basis in the evidence presented and were completely improper. *Id*. at 291.

Here, plaintiff challenges defense counsel's statements that plaintiff was a "polished" witness because he was familiar with the court system, failed to call or use Emergency Medical Services (EMS), had chronic neck pain, and would have experienced neck pain regardless of the accident. Defense counsel further attributed plaintiff's neck pain to degenerative changes, characterized the accident as a "fender bender," and allegedly bolstered the credibility of defendants' expert witness, Dr. Kalkanis. But defense counsel's statements regarding plaintiff's failure to call or use EMS, history of chronic neck pain, and degenerative changes were all factual assertions that counsel sought to prove during trial. See *Wiley*, 257 Mich App at 503. And although counsel characterized the accident as a "fender bender," when read in context, defense counsel's comment was made to demonstrate that the accident was not serious enough to cause plaintiff's injuries. Because defense counsel sought to prove that plaintiff's injuries did not arise from the accident, his statement was based in the evidence and not improper.

Although statements that plaintiff was a "polished" witness, were arguably not based in evidence or offered for a proper purpose, such as to suggest that a witness may not be testifying truthfully, *Zaremba Equip, Inc*, 302 Mich App at 25-26, these comments did not constitute extreme misconduct akin to the statements made in *Badalamenti*. The comments regarding Dr. Kapsokavathis's credentials and the question regarding the difference between an orthopedic surgeon with a spine specialty and a neurosurgeon, did not bolster the credibility of defendant's expert, Dr. Kalkanis. Moreover, any error was harmless and did not deny plaintiff a fair trial because the trial court instructed the jury on more than one occasion that the comments, arguments, remarks, and statements of the attorneys were not to be considered as evidence. *Reetz*, 416 Mich at 105; see also *Tobin v Providence Hosp*, 244 Mich App 626, 641; 624 NW2d 548 (2001). Because there is no indication that the jury was influenced by these statements, the court offered a proper curative instruction, and "jurors are presumed to follow their instructions," *Lenawee Co v Wagley*, 301 Mich App 134, 161; 836 NW2d 193 (2013), plaintiff is not entitled to relief on these grounds.

## IV. JUDICIAL MISCONDUCT

Plaintiff contends that he was deprived of a fair trial because the trial court fostered a prejudicial, biased, and hostile environment toward him. We disagree.

### A. STANDARDS OF REVIEW

The question whether judicial misconduct deprived the appellant of a fair trial is a constitutional-law question that we review de novo. *In re Estate of Susser*, 254 Mich App 232, 236-237; 657 NW2d 147 (2002).

### B. ANALYSIS

A trial judge must act as a neutral and detached judicial officer. See *Cain v Dep't of Corrections*, 451 Mich 470, 509; 548 NW2d 210 (1996). When evaluating a claim of judicial bias, the appellate court must consider the totality of the circumstances to determine whether "the judge demonstrated the appearance of advocacy or partiality on the whole." *People v Stevens*, 498 Mich 162, 172; 869 NW2d 233 (2015).

[T]he reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. . . . Reviewing courts may consider additional factors if they are relevant to the determination of partiality in a particular case. . . . The reviewing court must consider the relevance and weigh the significance of each factor under the totality of the circumstances of the case. [*Id*. (citations omitted).]

"A trial judge is presumed to be impartial and the party who asserts partiality has a heavy burden of overcoming that presumption." *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). Additionally, "MRE 611 grants a trial court broad power to control the manner in which a trial is conducted, including the examination of witnesses." *Hartland Twp v Kucykowicz*, 189 Mich App 591, 595; 474 NW2d 306 (1991).

At the outset of trial, the trial court emphasized that it did not "care who wins, who loses. But I want this case run efficiently and fairly according to the rules of evidence." Throughout trial, several of the court's comments and rulings reflected the court's desire to move the trial along expeditiously. For example, during the opening jury instructions, the trial court stated:

Now, I'm a passionate person, so sometimes I raise my voice. I don't mean to influence your verdict in any way about any of the facts. So if I do raise my voice, all I'm trying to do is move the case along so that we don't stay here past Thursday, you know. I know you have a life beyond the court.

Additionally, the trial court reprimanded both Damarius and plaintiff's counsel for returning late after a break in the proceedings. In both instances, the trial court threatened to hold them in contempt for their tardiness. However, unlike Damarius, who expressed remorse for being late, plaintiff's counsel told the bailiff that "not arguing with [the judge]; [the judge is] going to have to wait." After the jury rendered a verdict in favor of defendants, the trial court entered an order requiring plaintiff's counsel to show cause why he should not be held in contempt for delaying the trial and disrespecting the court. But the court later withdrew the order. Although the trial court's conduct was arguably harsher toward plaintiff's counsel, the court ultimately did not punish counsel for his tardiness, suggesting that there was no one-sided bias against him. Moreover, the trial court's actions were arguably justified given counsel's disrespectful and argumentative response to the court's admonishment of his tardiness.

The record also shows that throughout trial, plaintiff raised seven objections to statements or arguments made by defense counsel, and defense counsel raised five objections. The trial court sustained four objections in favor of defendants, one objection in favor of plaintiff, overruled one objection in favor of plaintiff, and six objections in favor of defendants. While the evidentiary rulings by the trial court were not equally favorable to each side, there is no evidence the rulings were based on any bias or prejudice against plaintiff or his counsel.

For example, plaintiff objected to defense counsel's question to Dr. Kapsokavathis regarding the difference between an orthopedic surgeon with a spine specialty and a neurosurgeon,

claiming defense counsel was bolstering his expert witness, Dr. Kalkanis. But defense counsel never made any comments suggesting one specialty was more qualified or superior to the other, he simply asked about the differences between them. Thus, it was not an error for the trial court to overrule this objection. Additionally, defense counsel raised an objection after Dr. Kapsokavathis, unprompted, testified beyond the scope of questioning. Plaintiff claims that when sustaining the objection, the trial court "snapped" at Dr. Kapsokavathis. The record shows the trial court only admonished Dr. Kapsokavathis because he answered beyond the scope of defense counsel's question after the court had already instructed him not to do so. Accordingly, any frustration by the trial court was in response to Dr. Kapsokavathis's failure to adhere to the court's rulings and not because of any alleged prejudice.

Plaintiff also takes issue with the fact that the court allowed defense counsel to recross-examine Dr. Kapsokavathis and introduce plaintiff's medical records. But trial courts have "broad power to control the manner in which a trial is conducted, including the examination of witnesses," *Hartland Twp*, 189 Mich App at 595, and plaintiff cites no caselaw or court rule precluding the trial court from allowing recross-examination of a witness. Moreover, defense counsel's questioning and reference to plaintiff's medical records was not beyond the scope of plaintiff's redirect-examination. During redirect-examination, plaintiff's counsel asked Dr. Kapsokavathis about plaintiff's prior medical records indicating that he had pain in his neck between 2012 and 2014, but not between 2014 and 2019. On recross-examination, defense counsel asked Dr. Kapsokavathis about plaintiff's medical records, which had already been admitted, to determine whether any of the records showed prior damage to plaintiff's neck. Thus, the line of questioning was arguably not beyond the scope of the redirect-examination.

Finally, assuming arguendo that the trial court's tone, demeanor, comments, and rulings suggested to the jury that it had a bias against plaintiff, the court cured any alleged prejudice with a curative jury instruction in its opening remarks, stating:

> My comments, rulings, and instructions are not evidence. It is my duty to see that the trial is conducted according to law and to tell you the law that applies to this case; however, when I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about the case. If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion.

The court provided a similar instruction during the final jury instructions. Because a review of the record demonstrates that plaintiff failed to meet his "heavy burden of overcoming" a presumption of impartiality, *MKK*, 286 Mich App at 566, and any alleged error was cured by the jury instructions, plaintiff is not entitled to a new trial.

## V. CLOSING ARGUMENTS

Plaintiff argues the trial court deprived him of a fair trial because it limited the time allotted for closing arguments. We disagree.

## A. STANDARDS OF REVIEW

The decision to limit closing arguments is reviewed for an abuse of discretion. See *Warden v Fenton Lanes, Inc*, 197 Mich App 618, 625; 495 NW2d 849 (1992). A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

## B. ANALYSIS

"This Court has recognized a trial court's broad power of discretion in matters of trial conduct, including limiting arguments of counsel." *Warden*, 197 Mich App at 625. A court may limit the time allowed for closing arguments, but must give adequate time for argument, taking into consideration the complexity of the action. MCR 2.507(F). In *Warden*, the plaintiff fell and injured her hip at the defendant bowling alley. *Warden*, 197 Mich App at 620. During a two-day trial, the jury heard testimony from five witnesses about the incident. *Id*. at 621, 625. The trial court limited the parties' time for closing arguments to 10 minutes each. *Id*. at 625. Because the defense covered every element necessary for a decision on the case and the trial court adequately instructed the jury as to the law, this Court held that the trial court did not abuse its discretion in limiting closing argument. *Id*.

Similar to *Warden*, trial in this case was held over two days and four witnesses testified. At the conclusion of proofs, the trial court permitted plaintiff 30 minutes for argument and 10 minutes for rebuttal. Defense counsel, on the other hand, was given 40 minutes for his main argument. Thus, the trial court granted both parties 40 minutes in total to conduct closing arguments. This is 30 more minutes than the court permitted in *Warden*. Moreover, plaintiff's counsel addressed the facts regarding the accident, plaintiff's injuries, his health history, the elements of negligence, and the determination of damages. And when asked how much time he would need for closing arguments, plaintiff's counsel stated he only needed "half hour, 40 minutes maybe"—exactly the amount of time he received. We find that the trial court did not abuse its discretion by limiting the time allotted for closing arguments.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ James Robert Redford